BOWEN et al., Appellants, *v.* FIRST STATE BANK et al.,
RESPONDENTS.

(No. 5,358.)

(Submitted November 15, 1923. Decided December 12, 1923.)

[221 Pac. 527.]

*Fraudulent Conveyances—Husband and Wife—Evidence—In-*
*sufficiency—Mortgages—Equity of Redemption—Sale—Exe-*
*cution—Sheriff's Deeds.*

Fraudulent Conveyance—Creditors' Suits—Privity With Property Necessary.
    1.  Before a creditor can question the validity of a sale or transfer of property made by his debtor on the ground of actual or constructive fraud, he must bring himself into privity with it by showing a special interest in or lien upon it, which interest or lien may be acquired by the levy of an attachment or execution.

Mortgages—Mortgagor may Release Equity of Redemption.
    2.  The maxim "once a mortgage, always a mortgage" does not prohibit the mortgagor from selling or releasing his equity of redemption to the mortgagee by a separate and distinct contract entered into in good faith and for a good consideration.

Same.
    3.  A release or conveyance of the mortgagor's interest in the mortgaged land made after default will be sustained if supported by a sufficient consideration and where there is no showing of fraud, oppression or undue influence.

Fraudulent Conveyances—Husband and Wife—Evidence—Insufficiency.
    4.  Husband and wife executed a mortgage on their property and thereafter the former conveyed to the latter all his interest in it. Later they conveyed it to the mortgagee in satisfaction of the mortgage, the husband, however, disclaiming any interest in it, and on the same day the mortgagee transferred it to the wife for a valuable consideration. In an action by creditors of the husband, who after execution of the mortgage had given a promissory note to them which remained unpaid whereupon the creditors had the property attached and sold on execution, they becoming the purchasers, to have the deed to the mortgagee declared a mortgage and the title quieted in themselves, *held* that while transactions of this character should be closely scrutinized, there was nothing to show fraud or oppression practiced on the husband, or undue advantage taken of him in the transaction, it appearing further that the value of the land did not exceed the amount of the mortgage discharged, and that therefore plaintiffs had no cause for complaint of the finding that the deed was valid.

---

    4.  Burden of proof as to fraud against creditors in transfer from husband to wife, see note in 56 L. R. A. 823.

    Purchase by husband in name of wife with intent to defraud creditors, see notes in Ann. Cas. 1915C, 1091; Ann. Cas. 1917B, 225.

[69 Mont. 223.]

Execution—Sheriff's Deed Conveys No Interest, When.
    5. A sheriff's deed relates back to the date on which the property
    was attached; hence where at the time creditors attached property
    the judgment debtor had no interest whatever in it, the deed con-
    veyed none to them.

*Appeal from District Court, Granite County, in the Third Judicial District; James M. Self, a Judge of the Fourth District, presiding.*

ACTION by Fred Bowen, Jr., and another, copartners, engaged in business as the Bowen Hardware Company, at Philipsburg, against the First State Bank and others. Judgment for defendants and plaintiffs appeal. Affirmed.

*Mr. Wingfield L. Brown* and *Mr. R. Lewis Brown,* for Appellants, submitted a brief; the former argued the cause orally.

*Mr. R. E. McHugh,* for Respondents, submitted a brief and argued the case orally.

MR. JUSTICE STARK delivered the opinion of the court.

The plaintiffs, claiming to be the owners of a ranch containing 360 acres of land located in Granite county, brought this action for the purpose (1) of obtaining a judgment declaring that a deed executed and delivered by the defendants William W. Mason and Anna E. Mason, his wife, on December 5, 1918, conveying said land to the defendant First State Bank, was in fact a mortgage; (2) to compel an accounting of certain transactions between the defendants William W. and Anna E. Mason and the defendant bank for the purpose of ascertaining the true amount due upon the alleged mortgage; and (3) to quiet the title to said land in the plaintiffs against all claims and demands of the defendants save only such amount, if any, as should be found due from Mason and wife to the bank by reason of the alleged mortgage.

The defendant bank alone appeared in the action, joined issue with the allegations of the complaint, set up title to the land in itself, and asked that such title be quieted in it against

the claims of the plaintiffs. The default of all the other defendants was regularly entered.

The cause was tried to the court without a jury, and, at the close of the testimony, findings of fact and conclusions of law favorable to the defendant bank and against the plaintiffs were made and filed, upon which a judgment was entered adjudging, in effect, that the plaintiffs had no interest in the land in controversy, and that the defendant bank was the owner thereof, and quieting the title thereto in it against the claims of the plaintiffs. From this judgment the plaintiffs have appealed.

The facts developed at the trial, which are essential to a determination of the issues, are as follows: On the thirty-first day of May, 1917, William W. Mason was the owner of the land in controversy and also had eighty-one head of cattle, nine horses, one mule, four hogs, three sets of harness, a blacksmith outfit, a separator with a sixteen-horsepower engine, wagons, and other farming tools, implements, and machinery located thereon. On that day he and his wife borrowed $10,000 from the defendant First State Bank, and gave it their promissory note due in two years, bearing interest at the rate of eight per cent per annum, to secure which they executed and delivered to the bank a mortgage covering the land above mentioned, which was recorded in Book 7 of Mortgages, at page 435, in the office of the county clerk. At the same time, as additional security for the payment of the $10,000 note, they gave the bank a chattel mortgage on the above-mentioned personal property, which was duly filed in the proper office.

On September 20, 1918, the bank, pursuant to a provision contained in the mortgage, elected to declare the total amount of the note secured thereby to be immediately due, and commenced an action to foreclose the same. In connection with the foreclosure suit, an application was made for the appointment of a receiver to take charge of and conserve the mortgaged property. The affidavits filed in support of this application disclosed that the defendant William W. Mason had

disposed of certain of the mortgaged chattels and had not accounted to the bank for the proceeds; that Mason and his wife were having domestic troubles, and that there was no one in possession of and looking after the mortgaged property.

Upon the showing made Thomas Botscheider was appointed as receiver, qualified as such and entered upon the discharge of his duties. The difficulty between Mason and his wife apparently reached its climax on September 25, 1918, when an adjustment was made between them, as a result of which Mason conveyed to his wife all of his interest in the above land and personal property. Thereafter, on or about the second day of November, 1918, the bank and the two Masons signed and filed in court a consent that all of the personal property embraced in the mortgage and involved in the proceeding might be sold by the receiver, and pursuant to this consent an order of court was made for its sale. Subsequent to the making of this order of sale the receiver sold fifty-two head of the mortgaged cattle, which was apparently all that could be found, for the sum of $2,100. This sale was made at the special request of Mrs. Mason, for the reason that the cattle which were sold consisted of common range stock, and she desired to use the proceeds of this sale for the purchase of some milk cows. This arrangement was satisfactory to the bank, and, after the sale, on October 21, 1918, an agent of the bank arranged for the purchase of sixteen head of milk stock and one Holstein bull for Mrs. Mason, and paid $1,805 for the same out of the proceeds of this sale. The balance of $295 was disposed of in the payment of taxes due upon the mortgaged property and the expense of the foreclosure proceeding.

On December 5, 1918, Mrs. Mason and her husband, by warranty deed, conveyed the land to the bank for a consideration of $9,825, which was the amount then due upon the original $10,000 note. This deed contained the following recital: "This deed is given by parties of the first part to party of the second part, and accepted by party of the second part in full satis-

faction of all claims between the parties arising out of mortgage recorded in Book 7 of Mortgages, page 435, records of Granite county, Montana.'' Upon the execution of this deed, the bank surrendered to the Masons the original $10,000 note.

Lawrence Hauck, who was president of the defendant bank at the time the $10,000 loan was negotiated on May 31, 1917, testified that the estimated value of the land and personal property at that time was around $13,000. E. E. Springer, cashier of the bank, testified that he made an inspection of the land in the spring and summer of 1918, and at that time estimated that it was worth about $8,000, and that the value of both the land and personal property was approximately equal to the amount of the bank's claim.

On the same day that the deed was executed an agreement was entered into between the bank and Mrs. Mason, by the terms of which the bank agreed to sell and convey the land to Mrs. Mason, and she agreed to purchase the same for the sum of $9,825, and as further evidence of her agreement to pay this amount executed two notes, one of which, for the sum of $2,000 became due December 5, 1919, and the second for the sum of $7,825, became due on December 5, 1920. Defendant William W. Mason was fully advised of this contract, and indorsed his approval upon the same in these words: ''The above contract has been read by me, and I hereby agree to all of the terms thereof. And I hereby waive any and all past, present, or future interest that I now have, or may have had in the premises covered by this agreement. The above agreement having been entered into with my full knowledge and consent.'' As security for the payment of the notes, Mrs. Mason executed and delivered to the bank a chattel mortgage covering what was left of the personal property, which had been included in the original mortgage executed by the parties on the thirty-first day of May, 1917, and which had theretofore been transferred to her by her husband. Although William W. Mason joined in the execution of the chattel mortgage, he had no interest in the property mort-

gaged, was not made a party to the contract under which the bank agreed to sell the land to Mrs. Mason, and acquired no interest therein.

The Masons were in possession of both the real and the personal property at all times from the date of the execution of the original mortgages down to the time of the conveyance of the real estate to the bank, and Mrs. Mason retained its possession after the execution of the agreement to sell and purchase.

On March 4, 1919, pursuant to a written stipulation signed by the bank, its attorney, and the two Masons, in which it was recited that all matters in controversy in the suit had been amicably adjusted, an order of court was made in the foreclosure suit discharging the receiver, releasing his bondsmen, and dismissing the action.

On June 9, 1917, William W. Mason executed and delivered to the plaintiffs his promissory note for $400 due in six months, bearing interest at the rate of eight per cent per annum. This note was not paid, and on July 2, 1919, the plaintiffs commenced an action thereon, caused a writ of attachment to be issued, and on the seventh day of July, 1919, under this writ all of the right, title and interest of Mason in and to the above-mentioned land, standing upon the records in the name of the defendant First State Bank, was levied upon by the sheriff of Granite county. Thereafter such proceedings were had in said action that on the twenty-third day of December, 1919, a judgment of the court was duly given and made in favor of the plaintiffs and against the defendant William W. Mason for the sum of $547.36.

On July 12, 1920, an execution was issued upon this judgment, and placed in the hands of the sheriff of Granite county. After proceedings thereunder regularly had, the sheriff sold all of the right, title and interest of Mason in and to the real estate, and at the sale the plaintiffs herein became the purchasers and received the usual certificate of sale. No redemption having been made, the sheriff, on October 4, 1921,

executed and delivered to the plaintiffs a sheriff's deed, conveying to them all of the right, title and interest of Mason in and to the land, which deed was duly recorded in the proper office, and is the basis of the title asserted by the plaintiffs.

It is not contended that either the bank or Mrs. Mason ever had any actual knowledge or notice of plaintiffs' claim against William W. Mason; the only notice thereof which could be imputed to them is such as might be attributed by the levy of the writ of attachment on the land.

In the view which we take of the case, but one question is presented for determination, and that is: Did the defendant William W. Mason have any interest in the land in controversy at the time of the levy of the writ of attachment, on July 7, 1919?

It is the law in this state that before a creditor can question the validity of a sale or transfer of property made by his debtor upon the ground of actual or constructive fraud, he must bring himself into privity with it by showing a special interest in or lien upon the same. Such interest or lien may be acquired by the levy of an attachment or execution. (*Westheimer* v. *Goodkind,* 24 Mont. 90, 60 Pac. 813; *Wyman* v. *Jensen,* 26 Mont. 227, 67 Pac. 114.) The plaintiffs have neither pleaded nor proven such interest in or lien upon any of the personal property which is mentioned in the pleadings and proof, and this renders it unnecessary to consider the effect of the bill of sale from Mason to his wife executed on September 25, 1918. As between the parties the transaction was valid, and after its consummation Mrs. Mason was at liberty to deal with the property as she chose, at least until the validity of its transfer was attacked in a proper way.

Whether or not the conveyance of the land from Mason to his wife on September 25, 1918, could have been sustained against the attack of a creditor, was rendered immaterial by the subsequent acts of the parties.

The deed from Mason and wife to the bank on December 5, 1918, extinguished all the interest which he had in the land. In the deed itself it is declared that the same was given to and accepted by the bank in full satisfaction of the mortgage indebtedness theretofore existing between the parties, and from that time on Mason expressly disclaimed any interest therein. On the same day the deed was executed he signed the written statement in connection with the contract of sale and purchase between the bank and Mrs. Mason above set out, wherein he declared that he waived "any and all past, present, or future interest," that he then had or might have had in said land. The record does not contain an iota of proof that he thereafter asserted any claim to or interest whatever in the same.

"The maxim 'once a mortgage, always a mortgage' does not **[2]** prohibit the mortgagor from selling or releasing his equity of redemption to the mortgagee by a separate and distinct contract entered into in good faith and for a good consideration." (19 R. C. L. 386.) A release or conveyance of the mortgagor's interest in the mortgaged land, made subse-**[3]** quent to the mortgage, after a default in complying with a condition thereof, will be sustained, if supported by a sufficient consideration, and where there is no showing of fraud, oppression, or undue advantage. (*Watson* v. *Edwards*, 105 Cal. 70, 38 Pac. 527; *Seymour* v. *Mackay*, 126 Ill. 341, 352, 18 N. E. 552, see, also, extended note to *Bradbury* v. *Davenport* (114 Cal. 593, 46 Pac. 1062), in 55 Am. St. Rep. 92.)

Transactions of this nature should be carefully scrutinized, **[4, 5]** but a diligent consideration of all the dealings between the bank and Mason which culminated in the execution of the deed on December 5, 1918, fails to disclose that any fraud or oppression was practiced upon, or undue advantage taken of, him in connection therewith. The value of the land conveyed to the bank in satisfaction of the debt discharged by the conveyance did not exceed the amount thereof.

It is not necessary for a determination of the issues in this case to discuss the relations of Mrs. Mason to the land subsequent to the conveyance of December 5, 1918. Whether, as between her and the bank, the relation of mortgagee and mortgagor was created by the deed and contract of that date is immaterial here. The purchase and sale contract is between the bank and her alone. It is not claimed by the plaintiffs that she held any interest in this contract as trustee for her husband, and, as above pointed out, from that time on he disclaimed any interest whatever in the land.

Plaintiffs' attachment on the land was not levied until July 7, 1919, or seven months after the transaction between the defendant William W. Mason and the bank, by which he parted with the last vestige of his interest in the land involved, and had been fully closed.

Since the sheriff's deed conveying the land in question to the plaintiffs related back only to the date of the attachment and the defendant Mason had no interest in the land at that time, the deed conveyed no interest therein to them.

After due consideration of the whole record and all errors assigned, it appears that the judgment appealed from was correct, and it is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, HOLLOWAY and GALEN concur.