CAHILL-MOONEY CONSTRUCTION COMPANY, A COR-
PORATION, PLAINTIFF AND APPELLANT, v. ROY R. AYRES
AND VERNA H. AYRES, HIS WIFE, AND C. E. AYRES AND
ONEITA AYRES, HIS WIFE, DEFENDANTS AND RESPONDENTS.

No. 10354.
Submitted April 3, 1962. Decided August 6, 1962.
373 P.2d 703.

Morrow & Nash, Bozeman, Corette, Smith & Dean, Butte, John E. Corette, III (argued orally), Butte, for appellant.

Lovelace, Horkan & Berg, Bozeman, Ben E. Berg, Jr. (argued orally), Charles F. Angel (argued orally), Bozeman, for respondents.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

Appeal from a judgment of dismissal entered in the district court of the eighteenth judicial district, Gallatin County, following an order of the court sustaining special demurrers filed by the defendants and the refusal of the plaintiff to further plead.

The complaint herein set forth three causes of action. The first alleged that the defendant Roy R. Ayres was indebted to the plaintiff in a specified sum of money.

The second cause of action set forth the allegations as to the execution of certain mortgages upon the described property by the defendant Roy R. Ayres to the defendants C. E. and Oneita Ayres, and a conveyance of the same property by defendant Roy R. Ayres to his wife, Verna H. Ayres, and that by reason of the mortgages and deed the defendant Roy R. Ayres became insolvent, and each of the mortgages and the deed was made without a fair consideration.

The third cause of action, after certain reallegations of matters contained in the previous two causes of action, alleged that the defendant Roy R. Ayres at the time of each of the mortgages

was engaged in business and that after their execution he had an unreasonably small capital in his business.

The prayer sought judgment against Roy R. Ayres for the amount of the indebtedness; that the mortgages be set aside, annulled and held for naught; that the deed be set aside, annulled and held for naught; and for costs and such other and further relief as may be just and proper in the premises.

Separate and special demurrers were filed by Roy R. Ayres, by C. E. Ayres and Oneita Ayres, and by Verna H. Ayres, all upon the grounds that the causes of action were improperly united in that they belonged to different classes enumerated in section 93-3203, R.C.M.1947, and for the further reason that the first cause of action affected only Roy R. Ayres and did not affect all of the parties defendant.

These separate and special demurrers were each sustained and plaintiff granted time in which to further plead. To this order plaintiff filed exception and stated it would not amend its complaint and would stand upon it. Thereafter judgment was entered from which this appeal is taken.

In this court respondents have filed a motion to dismiss, predicated upon two grounds. The first is that the judgment was not appealable because it was a voluntary one based on the order sustaining the special demurrers, and secondly, that the appeal is not taken from such a judgment or order as is enumerated in section 93-8003, R.C.M.1947.

Respondents in support of their motion contend that the dismissal was a voluntary one, but we are not inclined to adopt such view. They further contend that the judgment is simply an intermediate ruling and is not a final judgment, and seek to differentiate between the general demurrers and special demurrers.

It has long been the rule in Montana that a judgment entered following the sustaining of a demurrer, when the appellant has elected to stand upon his pleading, is appealable under section 93-8003, R.C.M.1947. See McLean v. Dickson, 58 Mont. 203, 190

P. 924; Sorrels v. Ryan, 129 Mont. 29, 30, 281 P.2d 1028; Monarch Lumber Co. v. Haggard, 139 Mont. 105, 360 P.2d 794.

We hold the motion to dismiss is without merit and the same is denied.

As to the merits of the appeal it is respondents' contention that section 93-3203, R.C.M.1947, which provides in part that, "The causes of action so united must all appear on the face of the complaint to belong to one only of these classes, and must affect all the parties to the action" is controlling and that there is a misjoinder where one of the causes of action does not affect all of the parties.

Appellant, on the other hand, contends that the type of action and joinder of the causes of action here involved are authorized by the specific provisions of the Uniform Fraudulent Conveyance Act, being sections 29-101, et seq., R.C.M.1947.

We have not previously considered the Uniform Fraudulent Conveyance Act so far as the contentions here present are concerned.

The Act was adopted in Montana in 1945. The Act had been approved by the National Conference of Commissioners on Uniform State Laws in 1918 and submitted to the various state legislatures for consideration. The following year, 1919, it was adopted by several states including South Dakota, Michigan and New Jersey. Minnesota followed in 1921, New York in 1925, and California in 1939, to mention a few of the states in which it had been in effect prior to our adoption.

We have long observed in our decisions that where a statute is similar to one in a sister state that we should give consideration to the construction which it had received by the courts of the state where it had been previously adopted. Roberts v. Roberts, 135 Mont. 149, 338 P.2d 719, and cases cited therein. That such construction is not binding upon this court is likewise true. Kujich v. Lillie, 127 Mont. 125, 260 P.2d 383.

In 1929 in the case of the American Surety Co. v. Conner,

251 N.Y. 1, 4, 5, 6, 7, 166 N.E. 783, 65 A.L.R. 244, in an opinion written by Chief Justice Cardozo, that court stated:

"A question of procedure confronts us at the threshold. Neither the bank nor its assignee, the plaintiff, had recovered judgment against Conner when this action was begun. In the absence of enabling statute, it has been the practice of equity to refuse relief against a conveyance in fraud of creditors till the suitor has recovered a judgment at law establishing the debt. [Citing cases]. * * *

"* * * Article 10 of the Debtor and Creditor Law is substantially the same as the Uniform Fraudulent Conveyance Act, prepared by the Commissioners for the Promotion of Uniformity of Legislation in the United States, and is to 'be so interpreted and construed as to effectuate its general purpose to make uniform the laws of those states which enact it' [Citing cases.]. * * *

"We think the effect of these provisions is to abrogate the ancient rule whereby a judgment and a lien were essential preliminaries to equitable relief against a fraudulent conveyance. The Uniform Act has been so read in other states. [Citing cases.]. Decisions cited to the contrary were made without reference to the statute and without professing to construe it. See e. g., Lipman v. Manger, 185 Wis. 63, 200 N.W. 663. The reading seems to be inevitable, aside from any precedent. The act is explicit that a creditor may now maintain a suit in equity to annul a fraudulent conveyance, though his debt has not matured. It is not believable that a creditor with a debt already due was to be placed in a less favorable position, or beset by greater obstacles. For the one as for the other, the path is to be cleared of harassing impediments to the swift pursuit of justice. The act in its definition of a creditor seeks a rule of uniformity, and in so doing levels distinctions that at times had been the refuge of the dilatory debtor. It did not level them at the beginning to restore them later on. Certainty would, indeed, have been promoted if it had said in so many words that judgment and a lien should no longer be essential. We think it said as

much, however, by fair and natural implication. The creditor may reject the aid of equity, and levy attachment or execution at law (section 278, subd. b), as he might before the statute. He may seek the aid of equity, and without attachment or execution, may establish his debt, whether matured or unmatured, and challenge the conveyance in the compass of a single suit. This he might do, even before the statute, if the debtor waived compliance with the preliminary conditions [Citing cases.]. What once he might do of favor, he now may do of right. Questions may arise hereafter as to the proper mode of trial where the debt is in dispute [Citing cases.] or as to the proper form of judgment in the event that there are successive suits or several and competing creditors [Citing cases.]. The creditor who acts under section 278 is to set aside the conveyance 'to the extent necessary to satisfy his claim,' but when he acts under section 279, the restriction, if it exists, is implied and not expressed. The solution of these difficulties and others of like order may be postponed till they develop. Enough for present purposes that the plaintiff has a standing to challenge the conveyance.''

Later decisions in New York followed the principle that the right to seek a money judgment is merely collateral to the primary right to set aside the conveyance. Shugerman v. Sohn, 255 App.Div. 866, 7 N.Y.S.2d 587; Home Indemnity Co. v. Filyork Holding Corp., 258 App.Div. 962, 16 N.Y.S.2d 726; Henry v. The First Nat. Bank of Ardsley, [Sup.] 110 N.Y.S.2d 115.

The Supreme Court of Minnesota in 1938 in Lind v. O. N. Johnson Co., 204 Minn. 30, 38, 39, 282 N.W. 661, 119 A.L.R. 940, followed the reasoning set forth in the American Surety Co. case, supra [251 N.Y. 1, 166 N.E. 783], when it stated:

''In connection with the problem here presented the uniform act brings for solution the following questions: (1) Could plaintiff have assailed the 1928 transfer before he obtained a judgment, and, if so, was he obliged to pursue such a course

under penalty of the statute of limitations running from the time the transfer could first be impeached? (2) Does the act abolish the time-honored practice of securing judgment and having execution returned unsatisfied before bringing suit to set aside a fraudulent conveyance?

"2 Mason Minn.St.1927, § 8483, provides that a creditor whose claim has matured may have a fraudulent conveyance (or transfer) set aside to the extent necessary to satisfy his claim or he may disregard the conveyance and levy or attach the property. Section 8475 defines a creditor as a person having a claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed, or contingent. While it has been argued that the word 'creditor' in § 8483 should be construed as 'judgment creditor' (20 Columbia L.Rev. 339, 340, but see Bridgman, Uniform Fraudulent Conveyance Act in Minnesota, 7 Minn.L. Rev. 453, 530, at 540), the courts which have considered the problem in light of the act have not adhered to such a view and have held a creditor can set aside a transfer of property, fraudulent as to him, although he has not obtained a judgment. [Citing cases.] * * *

"We are inclined to the view that the better reasoned cases permit a simple creditor to maintain suit against a grantee of fraudulently conveyed property. The definition of 'creditor' in § 8475 is clearly broad enough to embrace a party without a judgment. Section 8484 grants to a creditor whose claim has not matured the right to apply to the court to set aside a fraudulent transfer by his debtor. Obviously such a proceeding could not be predicated upon a judgment. It does not seem sensible to say that a creditor whose claim has matured should be in any less advantageous position. The whole purpose of the enactment is aimed at the dishonest debtor and seeks to provide an orderly, efficient, and speedy remedy for the creditor."

In 1924 the Supreme Court of Michigan had this to say:

"With the adoption of the Uniform Fraudulent Conveyance Act (Act No. 310, Public Acts 1919, 1922 Supp.C.L. § 12003

[9]), the troublesome question of whether a levy should be made and a bill in aid of execution filed, or a creditor's bill filed upon return of an execution, or a bill with double aspect filed, has departed. Now, in case a conveyance is fraudulent as to a creditor, he may: '(a) Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim; or (b) Disregard the conveyance and attach or levy execution upon the property conveyed.' This gave plaintiffs the right to file the bills without making levies." Morse v. Roach, 229 Mich. 538, 201 N.W. 471.

In 1929 the Supreme Court of South Dakota had before it a case wherein a debtor had given a note to the plaintiff and approximately a year later, and after the note had become due, transferred certain lands to his wife. Plaintiff brought an action on the note, and also asked that the conveyance from the debtor to his wife be set aside as fraudulent as to creditors. The trial court had granted judgment on the note and adjudged that the conveyance from the debtor to his wife was made with intent to defraud his creditors and was void as to the plaintiff. The Supreme Court stated:

"Appellant contends that an action to set aside an alleged fraudulent conveyance cannot be maintained until the plaintiff has first secured a specific lien on the land, and that therefore her objection to the introduction of any evidence on that branch of the case should have been sustained. It is unnecessary to inquire whether that was the law in this state prior to the adoption of the Uniform Fraudulent Conveyance Act. Under section 9 of that act (chapter 209, Laws of 1919) a creditor whose claim has matured, who establishes that a conveyance was fraudulent as to him, may have the conveyance set aside to the extent necessary to satisfy his claim. We think under this provision, in an action brought upon matured obligation, upon proper pleading and proof, relief may be obtained by the setting aside of a conveyance fraudulent as to the plaintiff, without the necessity of first securing a specific lien upon the property

alleged to have been fraudulently conveyed. Morse v. Roach, 229 Mich. 538, 201 N.W. 471." Virgil State Bank v. Wahl, 56 S.D. 318, 320, 228 N.W. 392.

Again in 1931 the Supreme Court of Michigan had before it a case wherein a debtor had transferred certain property, and action was brought to have the transfer set aside as fraudulent and for a money decree against the debtor. In its opinion the court stated:

"* * * If the conveyance is fraudulent, plaintiffs' bill should not be dismissed on the ground of lack of equity jurisdiction. Whether or not it is fraudulent should be determined in the light of the provisions of the Uniform Fraudulent Conveyance Act ([3] Comp. Laws 1929, § 13392 et seq.), which provides:

" ' "Creditor" is a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent. "Debt" includes any legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent.

" 'A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured. * * *

" 'Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is *fraudulent* as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without fair consideration.'

"There can be no question but that, by giving this deed to his brother, Charles Jirasek became insolvent within the meaning of the act quoted. In this particular the circuit judge made the following finding:

" 'At the time of giving the deed practically all of the property possessed by the defendant, Charles Jirasek, of any value, including his automobile, was in the name of his brother, Joseph.'

"Because the conveyance rendered Charles Jirasek insolvent,

it was fraudulent as to creditors if made 'without fair consideration.' The undisputed proof is that there was absolutely no consideration for Charles' conveyance of his equity over and above the amount he owed to his relatives. Within the meaning of the act plaintiffs are creditors of Charles Jirasek and he is their debtor.

" 'One who has a cause of action based on a tort is a "creditor" within the meaning of the uniform fraudulent conveyance act.' (Syllabus) Dutcher v. Van Duine, 242 Mich. 477, 219 N.W. 651.

"The obvious purpose of this legislation was to make available to a 'creditor,' as defined in the act, an adequate remedy which theretofore was not available until the creditor had first reduced his claim to judgment. * * *

"The act is remedial. It should be given a liberal construction. It has been so construed in courts of other states wherein this uniform act has been adopted. * * *"

The opinion then quotes from American Surety Co. v. Conner, supra, and continues:

"It is of no consequence in this equitable proceeding whether plaintiffs' recovery from Charles Jirasek is based on fraud and deceit or that it is considered as in assumpsit upon waiver of a tort. Charles Jirasek's fraudulent conveyance of his property rendered him insolvent, and under the Uniform Fraudulent Conveyance Act the equity court acquired jurisdiction of the whole subject-matter in litigation. This case is unlike our recent decision in Farrell v. Hannan Real Estate Exchange, 251 Mich. 669, 232 N.W. 209, wherein the court found the plaintiff was not entitled to equitable relief of any character whatever, but only to damages recoverable, if at all, in an action at law. Under such circumstances the proceeding in equity was properly dismissed. But in the instant case as against all the defendants plaintiffs have established a clear right to injunctive and other equitable relief provided they maintain their conspiracy charge against Charles Jirasek. Under the circumstances of this record,

to hold that these plaintiffs do not have a right to equitable relief in this case is to say that the Uniform Fraudulent Conveyance Act affords a defrauded victim no remedy which he did not have prior to the enactment of this statute. For all practical purposes it would nullify the act. To make available the remedy provided by this legislation we should hold and do hold that the court of equity has and retains jurisdiction to adjudicate the whole controversy between these litigants.'' Hartford Acc. & Indemnity Co. v. Jirasek, 254 Mich. 131, 139, 143, 235 N.W. 836.

In 1944 the District Court of Appeals, First District of California, in Hefferman v. Bennet & Armour, 63 Cal.App.2d 178, 146 P.2d 482, held that it was not necessary that the claim of the creditor be first reduced to judgment before a fraudulent conveyance could be attacked. This holding was later affirmed in Rice v. Schubert, 101 Cal.App.2d 638, 226 P.2d 50.

In 1928 the Court of Appeals of Maryland in Lipskey v. Voloshen, 155 Md. 139, 141 A. 402, concurred in Morse v. Roach, supra. The court also reaffirmed its previous holding that a creditor could pursue its remedy in equity and not be compelled to resort to an action or actions at law.

In general these were holdings in jurisdictions which had adopted the Uniform Fraudulent Conveyance Act prior to its adoption in Montana.

Respondents correctly assert that prior to the adoption of the Uniform Fraudulent Conveyance Act, a creditor in Montana could not attack a conveyance as fraudulent unless and until he had first secured a lien on the property in question by a judgment and execution, a levy of attachment, or some other process. Bowen v. First State Bank, 69 Mont. 223, 221 P. 527; Missoula T. & S. Bank v. Boos, 106 Mont. 294, 77 P.2d 385.

Respondents also assert that the effect of the adoption of the Act was simply and only to allow a general creditor to assail a conveyance as fraudulent without first securing a lien on the property involved.

Appellant contends that all it is here asserting is a matured

obligation and the right to be able to collect thereon from the property of the defendant Roy R. Ayres, such property having been encumbered and transferred to other persons, being the other named defendants.

In Beers v. W. P. Devereux Co., 87 Mont. 210, 286 P. 406, this court held that Section 93-3203, R.C.M.1947, did not require that the causes of action united in one action should affect all parties equally or in the same manner.

There can be no doubt that all defendants are affected by this action though not all in the same manner. If the debtor conveyed and encumbered his property for less than adequate consideration at a time when he was insolvent or had an unreasonably small amount of capital left after such encumbrances and transfer, Sections 29-104 and 29-105, R.C.M.1947, provide such transactions would be fraudulent as to creditors.

In view of the provisions of the Uniform Fraudulent Conveyance Act and the views expressed by courts of other states when faced with somewhat similar situations, we believe the intent and purpose of the Act was to permit joinder of causes of action as has been done in the instant case. Any other interpretation renders the Act meaningless and would leave a creditor in the same situation as existed before its passage.

Rule 18(b) of the Montana Rules of Civil Procedure, Section 93-2704-2, R.C.M.1947, effective January 1, 1962, does permit this type of joinder and clarifies the situation but was not the controlling law at the time the order appealed from herein was entered.

For these reasons the judgment is reversed and the cause remanded to the district court for further proceedings not inconsistent with the views herein expressed.

MR. JUSTICES ADAIR, DOYLE, CASTLES and JOHN C. HARRISON concur.