No. 97-542

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 87

299 Mont. 206

999 P. 2d 315

FARMERS PLANT AID, INC., a

Montana corporation, and CASEY SMITH,

Plaintiffs and Respondents,

v.

CONNIE L. FEDDER,

Defendant and Appellant.

APPEAL FROM: District Court of the Twenty-First Judicial District,

In and for the County of Ravalli,

The Honorable Jeffrey H. Langton, Judge presiding.

COUNSEL OF RECORD:

**For Appellant:**

Steven T. Potts, Thompson, Jacobsen & Potts, Great Falls, Montana

**For Respondent:**

John E. Bohyer, Fred Simpson, Philips & Bohyer, Missoula, Montana

_____

Submitted on Briefs: February 3, 2000

Decided: April 11, 2000

Filed:

_____

Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

¶1. Connie Fedder appeals a judgment of the Twenty-First Judicial District Court, Ravalli County, which set aside as fraudulent a property transfer to her. We affirm.

¶2. We restate the issues raised and discussed in Fedder's briefs as follows:

¶3. I Did the District Court err by permitting Farmers Plant Aid, Inc., and Casey Smith to prosecute this fraudulent conveyance action after transferor John Foss filed a bankruptcy petition?

¶4. II Was it necessary that the plaintiffs establish that they had a lien or security interest in the property before they brought this action for fraudulent conveyance?

¶5. III Did the court err in finding that Fedder knew Foss was indebted to Farmers Plant Aid, Inc., and Smith on November 29, 1989, when Foss transferred his interest in their joint property to her?

¶6. IV Are certain other findings of fact supported by substantial evidence?

¶7. V Did the court err by concluding that a fraudulent conveyance had occurred as opposed to a preference?

¶8. VI Did the court err by concluding that a fraudulent conveyance had occurred even though there was no proof of the value of the property transferred?

¶9. VII Did the court err in entering certain other conclusions of law?

¶10. Casey Smith and Farmers Plant Aid, Inc., lease mineral rights to real property in Ravalli County,

Montana, for purposes of extracting peat from that land. They have an outstanding October 1993 default judgment against John Foss for $118,343.59 plus interest and costs for Foss's intentional interference with their access to the peat resources and his assault upon Smith with a rifle on September 25, 1989.

¶11.Smith and Plant Aid brought this action pursuant to the Uniform Fraudulent Conveyance Act, §§ 31-2-301 through -325, MCA (1989), to collect on their judgment against Foss. They allege that Foss fraudulently conveyed his forty-four percent interest in certain Ravalli County real property to his then-wife Connie Fedder in November of 1989, for consideration of $1. Following the conveyance, Fedder held an eighty-eight percent interest in the property and Foss's children from a previous marriage held a twelve percent interest. The marriage of Foss and Fedder was dissolved in 1990.

¶12.Smith and Plant Aid originally named both Foss and Fedder as defendants in this action. However, Foss filed for bankruptcy in September 1994, listing numerous creditors and no assets. He was eventually dropped as a defendant in this action. By stipulation, the parties submitted the case to the District Court based upon their briefs and the deposition testimony and exhibits filed. The court entered judgment in favor of Plant Aid and Smith, voiding the conveyance from Foss to Fedder and granting Plant Aid and Smith the right to levy execution upon the property.

Issue 1

¶13.Did the District Court err by permitting Farmers Plant Aid, Inc., and Casey Smith to prosecute this fraudulent conveyance action after transferor John Foss filed a bankruptcy petition?

¶14.Fedder asserts that upon Foss's filing of a bankruptcy petition in September 1994, Foss's bankruptcy trustee acquired the right to avoid his pre-petition fraudulent conveyances. She asserts that fraudulent conveyance claims thus passed from individual creditors such as Smith and Plant Aid to Foss's bankruptcy trustee, and that Smith and Plant Aid thus lost their standing and right to pursue a fraudulent conveyance claim. Fedder cites cases to support her argument, but all of those cases deal with the loss of creditors' rights to pursue such proceedings during the pendency of the bankruptcy. That is not the situation presented in the present case. Here, the judgment was obtained after the completion of Foss's bankruptcy.

¶15.Section 524 (e) of the Bankruptcy Code provides that discharge of a debt of a debtor does not affect the liability of any other entity for such debt. Numerous cases have held that after the close of a bankruptcy, creditors are free to resume or commence a fraudulent conveyance action against the transferee. *E.g., Federal Deposit Ins. Corp. v. Davis* (4th Cir. 1984), 733 F.2d 1083, 1085 ("Once a bankruptcy case has been closed, creditors having unavoided liens on fraudulently conveyed property can pursue their state law remedies independently of the trustee in bankruptcy"); *Kathy B. Enterprises, Inc. v. United States* (9th Cir. 1986), 779 F.2d 1413, 1415. Even where collection efforts may have occurred during the pendency of a bankruptcy, that is not a sufficient reason to set aside a subsequent judgment in favor of the creditor. *Kathy B.*, 779 F.2d at 1415.

¶16. The record of Foss's bankruptcy case, a copy of which was filed with the District Court following this Court's remand for that purpose, establishes that Foss's bankruptcy trustee was appointed after this action was filed, on September 6, 1994. Fedder removed this action to federal court on grounds that it was related to the bankruptcy case. Upon motion of Smith and Plant Aid, however, the federal court remanded the case to state district court. The bankruptcy court and the trustee clearly had notice of this action during its pendency. An order releasing Foss from all dischargeable debts was entered on January 31, 1995, and the trustee was discharged and the bankruptcy case finally closed on November 27, 1996. Judgment was not entered in the present case until several months later.

¶17. We hold that the District Court did not err by granting judgment in this action after Foss's bankruptcy proceeding had been concluded.

Issue 2

¶18. Was it necessary that the plaintiffs establish that they had a lien or security interest in the property before they brought this action for fraudulent conveyance?

¶19. Fedder states that in order for a person to recover in a fraudulent conveyance action, that person must be a creditor. She asserts that neither Smith nor Plant Aid were creditors when they obtained the underlying judgment in this action. They were not creditors of Foss, who had received a bankruptcy discharge; they were not creditors of the bankrupt estate, with which they did not file a claim; and they were not her creditors.

¶20. Fedder's argument is based upon the faulty premise that this action is in essence a claim against Foss's bankruptcy estate. This is simply incorrect. There is no requirement in either state fraudulent conveyance law or the bankruptcy code which mandates that plaintiffs file a proof of claim in bankruptcy court to preserve their right to pursue a fraudulent conveyance action against a third-party transferee like Fedder. Fedder was not the bankrupt party and the plaintiffs are not attempting to share in a distribution of Foss's bankruptcy estate.

¶21. This Court's holding in *Cahill-Mooney Const. Co. v. Ayres* (1962), 140 Mont. 464, 373 P.2d 703, compels the conclusion that a party need not obtain a lien or security interest prior to filing a claim for fraudulent conveyance under the Uniform Fraudulent Conveyance Act. In *Ayres*, the plaintiff creditor brought suit for collection on a debt and joined with it a claim to set aside fraudulent conveyances made by the debtor defendant to other co-defendants. The Court quoted with approval Chief Justice Cardozo of the New York Supreme Court, "We think the effect of these provisions [of the Uniform Fraudulent Conveyance Act] is to abrogate the ancient rule whereby a judgment and a lien were essential preliminaries to equitable relief against a fraudulent conveyance," and held that a creditor could join his action on a debt with an action to set aside a conveyance under the Uniform Fraudulent Conveyance Act. *Ayres*, 140 Mont. at 468 and 475, 373 P.2d at 705 and 709.

¶22. Thus, the holding of *Ayres* specifically relieved creditors of the burden of obtaining a lien prior to

bringing a Fraudulent Conveyance Act claim. In the present case, the plaintiffs had obtained their judgment against Foss in October 1993. We hold that they were under no obligation to take any further steps prior to the filing of this suit.

## Issue 3

¶23. Did the court err in finding that Connie Fedder knew Foss was indebted to Farmers Plant Aid, Inc., and Smith on November 29, 1989, when Foss transferred his interest in their joint property to her?

¶24. Our standard of review of findings of fact, as discussed under this issue and under Issue 4 below, is whether the District Court's findings are clearly erroneous. A district court's findings are clearly erroneous if they are not supported by substantial credible evidence, if the trial court has misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been committed. *Whalen v. Taylor* (1996), 278 Mont. 293, 299, 925 P.2d 462, 465.

¶25. The above statement of this issue represents Fedder's restatement of portions of several of the court's findings; the court did not actually find that Fedder knew that Foss was indebted to Plant Aid and Smith when he transferred his property right to her. The relevant findings, which Fedder also challenges as not supported by substantial evidence, were:

a. On or about September 25, 1989, John D. Foss committed an assault against Si Smith's successor in interest, Plaintiff Casey Smith herein, by pointing a rifle at him and threatening to shoot and kill him when Smith tried to enter the property under the mining rights of Plaintiff Farmers Plant Aid. At or near the same time, John D. Foss destroyed an access road and flooded the peat resource on the property in which Plaintiff Farmers Plant Aid had an interest in the mineral resource, thereby depriving Plaintiff Farmers Plant Aid of its right to mine peat and causing Farmers Plant Aid damages.

b. Despite her protestations otherwise, this Court also finds that Connie Fedder had actual knowledge that John Foss had engaged in tortious conduct against Farmers Plant Aid. At her deposition in this matter, she testified that John's sister, Millicent Huggans, had hired John Foss to plow up the road used by Farmers Plant Aid to mine peat moss. . . . Moreover, it is evident that she was well aware of the continuing hostilities between members of the Foss family and Farmers Plant Aid and its agents spanning several decades and generations, as well as among the Foss family members themselves. In point of fact, and as found by this Court herein at Finding of Fact No. 12, Connie and John were at the time of the 1989 conveyance involved in a suit filed by other members of the Foss family claiming that Connie and John Foss had fraudulently obtained ownership of his elderly mother's 53% interest in the Foss family property, which also renders Connie's claims of ignorance regarding the on-going feuds highly suspect.

c. Fedder's chief contention of error as to finding number 6 is that the finding is improperly based upon the contents of prior court actions. She asserts that this constitutes impermissible use of hearsay and does

not comport with the purpose for which judicial notice exists. Fedder points out that none of the witnesses in the present case testified that Foss had destroyed an access road and flooded the peat resources on the property.

¶26. The plaintiffs filed as an exhibit a copy of the earlier default judgment against Foss in the intentional interference and assault action, along with the court's accompanying memorandum. The plaintiffs also filed as exhibits copies of 1985 District Court findings, conclusions, and an order prohibiting the Fosses, and specifically John Foss, from "interfering or impeding in any manner the peat operations of Smith, his successors and assigns;" and a 1990 order of the District Court finding Foss in contempt of court for deliberately interfering with the plaintiffs' access to the peat resource on the Foss property.

¶27. Our Rules of Evidence provide that a court may take judicial notice of "[r]ecords of any court of this state or of any court of record of the United States or any court of record of any state of the United States." Rule 202(b)(6), M.R.Evid. Therefore, we conclude that the District Court acted properly in taking judicial notice of earlier court orders and findings.

¶28. We next consider the court's finding number 25, regarding Fedder's knowledge of Foss's tortious conduct. Fedder's deposition testimony unquestionably establishes that she knew Foss had plowed up property on which the plaintiffs were conducting their peat mining activities and that Smith had threatened to sue Foss over the assault with the rifle. In that deposition, she also described the continuing hostilities between the Smith and Foss families as akin to the "Martins and the McCoys."

¶29. We hold that the above two findings are supported by substantial evidence and are not otherwise clearly erroneous.

## Issue 4

¶30. Are certain other findings of fact clearly erroneous?

¶31. Fedder also challenges as unsupported the following finding made by the District Court concerning Fedder and Foss's actions after Foss conveyed his property interest to her:

a. However, they [Fedder and Foss] continued to represent to others that they both owned the property in question. Indeed, John and Connie continued to utilize the professional services of attorney Joseph Massman who approximately one year after entry of the Final Decree advised the public that he presently represented both Connie and John and that they were interested in selling "their" property.

b. This finding, says Fedder, is based "purely upon an unauthenticated hearsay letter."

¶32. Our Rule on authentication states that "the requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Rule 901(a), M.R.Evid. The letter here in question,

which was printed on attorney Massman's letterhead paper, was attached to Massman's deposition as part of his file on Fedder and Foss's dissolution of marriage, which he produced for his deposition. We hold that the exhibit was properly authenticated and supported the District Court's finding number 21, which was not otherwise clearly erroneous.

¶33.Fedder also specifically challenges the following finding:

a.Despite Connie's representation that John no longer works for her, John Foss continues to exert control over equipment located on the above-described real property. . . . Thus, this Court concludes that Connie's representations that the 1989 conveyance was intended as her settlement in the dissolution proceedings, and that John Foss had no justifiable interest in the property following the conveyance, are suspect.

b.Fedder asserts that the record does not support this finding concerning Foss's continued control over equipment on the property.

¶34.This finding is supported by Fedder's deposition. In that deposition, Fedder replied, "I don't know" when asked whether Foss still lived with her. She then elaborated:

a.The last he told me he was going over to Hamilton, take the equipment that he wanted to take, beat the shit out of what he wanted to beat the shit out of. And he didn't give a--we can't print that-what went on. He could not be arrested. He was a Foss.

b.That Foss continued to take and destroy equipment located on the property indicates his continued control over the equipment. We hold that the record supports the court's finding that Foss continued to exercise control over equipment, which finding was not otherwise clearly erroneous.

Issue 5

¶35.Did the court err by concluding that a fraudulent conveyance had occurred as opposed to a preference?

Our standard of review of a District Court's conclusions of law is whether those conclusions are correct. *Steer, Inc. v. Department of Revenue* (1990), 245 Mont. 470, 474, 803 P.2d 601, 603. We apply that standard in considering this and the remaining issues discussed in relation to this appeal.

¶36.A debtor may pay one creditor in preference to another or may give one creditor security for the payment of his demand in preference to another. Section 31-2-104, MCA. Fedder argues that Foss's transfer of title to her was in effect, a preference in recognition that she would be entitled to maintenance or support from him when they dissolved their marriage.

¶37.At the time of the November 1989 conveyance, however, Fedder and Foss were still married and

their dissolution action was not yet pending. The property transfer was not part of the dissolution, but preceded it. Additionally, Fedder has produced no evidence that Foss owed her any other obligation at the time of the conveyance. Thus, we conclude that Fedder has not established that she was a creditor of Foss at the time of his property conveyance to her for purposes of preferences to creditors as allowed under § 31-2-104, MCA.

¶38.More importantly, Fedder did not raise this argument as an affirmative defense to the complaint, nor did she raise it in her proposed findings of fact and conclusions of law. We will not hold the District Court in error based on an argument not raised before it. *Unified Industries, Inc. v. Easley*, 1998 MT 145, ¶ 15, 289 Mont. 255, ¶ 15, 961 P.2d 100, ¶ 15.

Issue 6

¶39.Did the court err by concluding that a fraudulent conveyance had occurred even though there was no proof of the value of the property transferred?

¶40.Fedder points out that the essence of a fraudulent conveyance is that property is transferred to another without fair consideration. *See* § 31-2-311, MCA (1989). She states that the District Court erred in making no findings on whether the transfer from Foss to her was supported by fair consideration. She also asserts that the court's conclusion that Foss was rendered insolvent by the conveyance of his interest in the property was not supported by sufficient evidence, in that there was no evidence of Foss's existing debts and that Foss had no existing debt to the plaintiffs at the time he conveyed his property to her.

¶41.Lack of evidence of fair market value of Foss's interest is irrelevant under well-established Montana authority. In *Montana Ass'n of Credit Mgmt. v. Hergert* (1979), 181 Mont. 442, 452, 593 P.2d 1059, 1064, this Court set forth the standard for determining whether fair consideration was given for purposes of determining whether a conveyance was fraudulent: "a consideration that is merely good and valuable will not support a conveyance which will render the grantor insolvent."

¶42.The District Court found, and Fedder does not contest, that Foss was rendered insolvent by his transfer to her of his interest in the real property:

a.[F]ollowing the conveyance of his interest in the subject real property to Connie, John D. Foss did not have assets with a present fair salable value sufficient to pay his probable liability on his existing debts as they became absolute and matured. Connie testified that John rarely, if ever, worked and that at the time of the November 29, 1989 conveyance, John Foss had no other assets to his name other than the subject property. . . . Connie also testified that John Foss had no money or clothes following the transfer. . . . She testified that other than his interest in the ranch, John Foss had no other property including personal property. . . . Connie further testified that John Foss had bad debts at the time of the conveyance. . . . Thus, by Connie's own admission, this Court finds that the November 29, 1989 conveyance to Connie rendered John Foss insolvent.

b.The District Court noted that the consideration listed in the agreement by which Foss conveyed his interest in the property to Fedder was $1. The court also noted the copies of Realtor listing agreements appended to Fedder's deposition in which Fedder listed the property for sale in 1994 for $1,260,000 and in 1995 for $700,000.

¶43.In light of the facts established in this case and the rule of law set forth in *Hergert*, we conclude that it was not necessary that the plaintiffs establish the present value of the property interest which Foss conveyed to Fedder, or that Foss had an existing debt to them at the time he conveyed his property interest to Fedder. We hold that the District Court did not err in concluding that a fraudulent conveyance had occurred even though there was no proof of the present value of the property transferred.

Issue 7

¶44.Did the court err in entering certain other conclusions of law?

¶45.Fedder argues that the conclusion that "John and Connie's retention and use of the same lawyer, one year after their divorce, for the purpose of marketing 'their' property, contributes to the conclusion that John's transfer was illusory and occurred in name only" is improperly based solely upon an unauthenticated letter from Massman and that the court improperly took judicial notice, in reaching its conclusions, of court orders and judgments in other cases. We have ruled above that the letter from Massman was properly considered as part of the record upon which it was stipulated that the court should enter its judgment. We now hold that the court's conclusion based upon that letter was correct. Similarly, we have ruled above that the court did not err in taking judicial notice of court orders and judgments in this case and in others previously before it.

¶46.Fedder asserts that the court erred in concluding that at the time of the conveyance to Fedder, Foss was involved in protracted pending litigation and was under the threat of litigation by Smith and Plant Aid; that on the day of the conveyance, Foss attended a hearing on an order to show cause why he should not be held in contempt of court for violating an earlier restraining order; and that he was aware or should have been aware that litigation might ensue from his tortious assault of Smith and his other acts interfering with the peat mining operation over the years. Again, all of these conclusions are correct based upon the record provided to the District Court and upon which it based its decision.

¶47.Fedder argues that there was no evidence to support the conclusion that she had knowledge of the fraud at the time of the conveyance; and that even if the plaintiffs are entitled to disregard the conveyance, they cannot do so without compensating her for the support she gave up by entering into the transaction with Foss in the first place.

¶48.The conclusion that Fedder had knowledge of the fraud at the time of the conveyance is based upon the court's conclusions that Fedder knew that Foss had committed or been accused of committing tortious conduct against Plant Aid; upon the court's unchallenged finding that Foss continued to live on the property following the conveyance; and on the finding which we have affirmed above that Fedder

knew that Foss had bad debts and no other assets following the conveyance.

¶49. We find completely without merit the argument that even if the plaintiffs are entitled to disregard the conveyance, they cannot do so without compensating Fedder for the support she gave up by entering into the transaction with Foss. Her claim for maintenance was never litigated, let alone reduced to judgment. Further, that after-the-fact claim did not constitute consideration for Foss's interest in the property. We note that absent other events, Fedder will retain her pre-fraudulent conveyance interest in forty-four percent of the property.

¶50. Fedder summarily argues that the court erred in failing to rule on her objections to exhibits offered by the plaintiffs. The exhibits as to which she raised specific objection in her briefs have been discussed above. Absent any argument to the contrary, we conclude that any error in the court's failure to rule on the remaining objections is harmless.

¶51. Finally, in her supplemental brief, Fedder argues that she was entitled to a jury trial. She did not raise this issue in her initial brief on appeal. The supplemental briefs were allowed following this Court's remand of this case to the District Court for the limited purpose of allowing that court to develop the record and to enter written findings, conclusions, and an order as to whether the plaintiffs were entitled to bring this action, as discussed under Issues 1 and 2. Because the jury trial issue was not timely raised on appeal, we decline to consider it. *See EBI/Orion Group v. Blythe* (1997), 281 Mont. 50, 56, 931 P.2d 38, 42.

¶52. We affirm the judgment of the District Court.

/S/ WILLIAM E. HUNT, SR.

We Concur:

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ JIM REGNIER