

DA 11-0187

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2012 MT 8

IN RE THE MARRIAGE OF
TONY EVERETT,

        Petitioner and Appellant,

  and

SARAH D. EVERETT,

        Respondent and Appellee.

APPEAL FROM:    District Court of the First Judicial District,
                      In and For the County of Lewis and Clark, Cause No. BDR 2008-100
                      Honorable Jeffrey M. Sherlock, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Charles A. Smith, Attorney at Law; Helena, Montana

        For Appellee:

                Robyn L. Weber, Attorney at Law; Helena, Montana

                            Submitted on Briefs:  November 9, 2011

                                        Decided:  January 17, 2012

Filed:

                _____
                              Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Tony Everett (Tony) appeals from the Findings of Fact, Conclusions of Law and Decree of Dissolution entered by the First Judicial District Court, Lewis and Clark County, which dissolved the marriage of Tony and Sarah Everett (Sarah), determined Tony's child support obligation, and adopted a parenting plan. We affirm. We address the following issues:

¶2 *1. Did the District Court abuse its discretion by imputing $90,000 in annual disposable income to Tony for purposes of calculating his child support obligation?*

¶3 *2. Did the District Court abuse its discretion when it delegated the duty to appoint a parenting coordinator?*

¶4 *3. Did the District Court err when it did not follow the recommendation of the parenting evaluator that Tony be allowed "make up" visitation days for those days he missed visitation while working out of town?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶5 Sarah and Tony were married in 2002. They have two children together. In 2007, the couple separated, and in 2008, Tony filed for dissolution. Sarah is employed at a dental office, earning $17 per hour. Tony is self-employed and owns businesses that operate under the names "Cowboy Junk" and "Sticker Dude."[1] Through these

---

[1] Tony also formerly operated Fun Time Souvenirs, but this business is no longer in existence.

2

businesses, Tony sells apparel, accessories, and seasonal items at state and county fairs, concerts, festivals and other public events across the country. Tony travels from event to event and sets up booths from which he sells his wares. The District Court found that Tony was also "engaged in various odd jobs."

¶6 Because Tony lives on the road when conducting business, he is able to take tax deductions from his gross income for many of his living expenses, such as lodging, vehicle payments, and meals. Because of these business deductions, Tony's annual taxable income from 2002-2009 ranged from around $11,000 to $26,000, although his businesses earned gross income during this time that ranged from $197,821 to $432,199.

¶7 After Tony filed for dissolution, Sarah applied for child support services through the Montana Child Support Enforcement Division (CSED). CSED determined that Tony earned or was capable of earning $90,000 per year for child support purposes despite his relatively low taxable income and issued a temporary order requiring him to pay child support based on that amount. The temporary order was in place during the pendency of the dissolution action. The District Court likewise adopted CSED's imputation of $90,000 in annual income to Tony for child support purposes, declining Tony's request that his income be determined as reflected on his income tax returns.

¶8 Dr. Stephen Wagner, the parenting evaluator, recommended that the District Court appoint a parenting coordinator because the parties were having difficulty communicating with one another about parenting issues. The court agreed, but instead of directly

appointing a coordinator, it appointed a third-party to select the parenting coordinator for the parties.

¶9 Dr. Wagner also recommended that Sarah provide "make up" days for Tony to exercise visitation with the children to substitute for those days Tony missed while working out of town. The court declined, finding that this process would be disruptive to Sarah and the children.

¶10 Tony appeals the District Court's determination of $90,000 as his annual income for child support purposes, from its appointment of a third-party to select the parenting coordinator, and from its denial of Tony's request for "make up" time.

## STANDARD OF REVIEW

¶11 We review findings of fact in child custody determinations to determine whether they are clearly erroneous. *In re Marriage of Graham*, 2008 MT 435, ¶ 8, 347 Mont. 483, 199 P.3d 211. We review an award of child support for abuse of discretion. *Graham*, ¶ 8 (citing *Albrecht v. Albrecht*, 2002 MT 227, ¶ 7, 311 Mont. 412, 56 P.3d 339). A trial court abuses its discretion when it acts "arbitrarily without employment of conscientious judgment or exceed[s] the bounds of reason resulting in substantial injustice." *Albrecht*, ¶ 7. Because the trial court is in a superior position to weigh the evidence, we will not overturn a child custody determination absent a clear abuse of discretion. *Graham*, ¶ 8, (citing *Czapranski v. Czapranski*, 2003 MT 14, ¶ 10, 314 Mont. 55, 63 P.3d 499).

4

¶12    *1. Did the District Court abuse its discretion by imputing $90,000 in annual disposable income to Tony for purposes of calculating his child support obligation?*

¶13    Tony argues the District Court erred by failing to adopt his taxable income, as indicated on his tax returns, as his income for purposes of child support because that was the only "objective," documented evidence of his income offered at trial.  Tony contends that the $90,000 amount, which the District Court obtained from the CSED proceeding, was determined by CSED solely from Sarah's unsupported contentions that the couple under-reported their income or over-reported business deductions.  He argues the District Court abused its discretion by ignoring the parties' income tax returns, which reflected annual taxable income of between $11,000 and $26,000, the testimony of Tony's tax preparer substantiating the tax returns, and a "no action" letter from the IRS declining to audit the former couple's 2007 tax return.

¶14    Sarah answers that the imputation of $90,000 was correct.  She argues that Tony failed in his duty to provide credible evidence of a proper calculation of his income for child support purposes.  Sarah attacked the credibility of Tony's accountant, Judy Barnes, at trial, offering that she is a close personal friend of Tony's, assists Tony on the road selling his wares and that, in 2008, 45 to 50% of Barnes's income was derived from Tony and his businesses.  In 2006, Sarah did the bookkeeping for Tony's businesses.  In conflict with Barnes's testimony, Sarah offered exhibits at trial to support her contention that the parties netted $86,524 after subtracting business expenses from sales.  Sarah

5

testified about the lifestyle the parties lived together and that Tony continues to live, offering that they were never hurting for money and enjoyed a "$90,000 per year lifestyle."

¶15 A "parent's disposable income rather than taxable income" is the proper figure for determining child support obligations. *Albrecht*, ¶ 17. "[A] district court must apply its discretion in a realistic manner, taking into account the actual situation of the parties." *Albrecht*, ¶ 7 (citation and quotations omitted). "Income for child support includes actual income, imputed income, or any combination thereof which fairly reflects a parent's resources available for child support." Admin. R. M. 37.62.106(1). This regulation further provides:

> (6) 'Imputed income' means income not actually earned by a parent, but which will be attributed to the parent based on:
>  (a) the parent's earning potential if employed full-time;
>  (b) the parent's recent work history;
>  (c) occupational and professional qualifications;
>  (d) prevailing job opportunities in the community and earning levels in the community.
> (7) Income should be imputed whenever a parent:
>  (a) is unemployed;
>  (b) is underemployed;
>  (c) fails to produce sufficient proof of income;
>  (d) has an unknown employment status;

Admin. R. M. 37.62.106.

¶16 During trial, the District Court engaged Tony's counsel as follows:

> The Court: Mr. Smith, I would like you to address this . . . it's fundamentally unbelievable that he makes $11,000 a year.
>
> . . .

Mr. Smith:    That is what he makes, Your Honor.

The Court:    Okay.  Fine.  Okay.  I just thought there might be something that I'm missing.

In its order, the District Court found that:

Tony stubbornly suggests to the Court that his annual earnings are approximately $11,000.  The Court finds this suggestion to be inherently not credible . . . .  [Tony's] businesses require Tony to travel around the United States to various county fairs and other events selling various items.  Tony is also engaged in various odd jobs . . . .  The Court notes that since the parties' separation, Tony has traveled to Puerto Rico, the Cayman Islands, and Mexico.  Even Dr. Wagner, in his June 10, 2010 letter (Ex. 14), states that "his [Tony's] report of $14,000 as his income seems questionable in view of his lifestyle."

¶17    The District Court further found that Tony's trial testimony was inconsistent with his earlier reporting of income and expenses, stating "the Court garners that it is inconceivable that Tony could pay his monthly expenses, whether they be $4,800 or $3,600 on an annual income of under $12,000."  It noted that "Tony is deducting various expenses that people who are not self-employed would be unable to deduct," making it "extremely difficult for anyone to calculate Tony's real income."  The Court concluded, "one thing is sure and that is that his real annual income is not $11,000."

¶18    The court then noted that Sarah was familiar with the bookkeeping and tax operations of Tony's businesses and accepted her testimony about Tony's "real income."  Following the lead of CSED, the District Court likewise imputed income to Tony "in the neighborhood of $90,000."  Although employing a slightly different support calculation than employed by CSED, and after considering Sarah's income, the court continued the

7

child support obligation at the amount of $394 per month per child for an initial three year period.

¶19 Imputation of income is appropriate when there is a failure "to produce sufficient proof of income." Admin. R. M. 37.62.106(7)(c). The District Court, which must determine "the strength and weight of conflicting testimony," *In the Matter of J.R.*, 2011 MT 62, ¶ 65, 360 Mont. 30, 252 P.3d 163 (citations and quotations omitted), determined that Tony's evidence lacked credibility and concluded that Tony had failed to sufficiently prove his income for child support purposes. The court chose to believe the testimony of Sarah regarding Tony's income, and we will not "second guess the district court's determination regarding the strength and weight of conflicting testimony." *In the Matter of J.R.*, ¶ 65 (citations and quotations omitted).

¶20 Tony also argues that the only objective and documented proof of his annual income is his tax returns, citing to Admin. R. M. 37.62.108(2), which provides, "Income of the parents must be documented. This *may include* pay stubs, employer statements, income tax returns, profit and loss statements." (Emphasis added.) As indicated by the emphasized language, this list of documentation is not exhaustive, and other documents may also provide the necessary proof. Here, the District Court relied upon a profit and loss statement Sarah had prepared for Tony's businesses in 2006. The court found that "[t]his document was prepared during the period when Sarah was the bookkeeper for the businesses. In that document, she calculated Tony's net income for 2006 as being $86,000." Contrary to Tony's assertion that the District Court "ignored" his income tax

8

returns, the testimony of Barnes, and the "no action" letter from the IRS, it is clear from the record that the District Court considered this evidence but found it to be lacking in credibility and accepted Sarah's evidence instead.

¶21 Finally, Tony objects to the District Court's statement that "[i]t appears that Tony did not file any objection to CSED's calculations," and the implication that the court was adopting CSED's income calculation because of this failure to object. Tony argues that an objection was unnecessary because the issue of child support was properly before the District Court in the dissolution proceeding. However, given the thorough review of the issue by the District Court, it is evident that the matter was decided on the basis of the evidence submitted to the court, and it is unnecessary for us address this argument further. The District Court did not abuse its discretion in imputing $90,000 of annual disposable income to Tony.

¶22 *2. Did the District Court abuse its discretion when it delegated the duty to appoint a parenting coordinator?*

¶23 The District Court determined that a parenting coordinator was necessary because "the parties stubbornly refuse to cooperate with each other, despite the negative repercussions that flow to their children." Both parties submitted a list of proposed coordinators, but the court noted that "[i]t is not surprising, given the level of nastiness in this case, that the parties cannot even agree on this." Sarah testified that she could not afford to pay someone to oversee the parenting plan. One of the persons on Sarah's list was Brooke Dolan, to whom Tony objected because she was "a friend and purported

landlord of Sarah's." Noting that "the Court knows Dolan to be a very responsible and levelheaded individual," the District Court, although not appointing Dolan to be the coordinator, nonetheless appointed her "to select a parenting coordinator who lives in Broadwater County." Dolan then appointed a local pastor, observing that the pastor had once accompanied Tony to a meeting.

¶24 Without citation to authority, Tony argues the District Court erred when it delegated its duty to select a parenting coordinator to Dolan. Further, in his opening brief, Tony expresses no objection to the appointment of the pastor as coordinator. Thus, Sarah answers that the issue is frivolous, because "Tony's only objection" is that Dolan made the selection. In his reply brief, Tony acknowledges that he "did not mention Pastor Dexter in the Opening Brief, but should have," and belatedly challenges the pastor's appointment.

¶25 However, a party may not raise an issue for the first time in a reply brief. *In re Estate of Bovey*, 2006 MT 46, ¶ 11, 331 Mont. 254, 132 P.3d 510 (citing *Pengra v. Sate*, 2000 MT 291, ¶ 13, 302 Mont. 276, 14 P.3d 499); *see* M. R. App. P. 12(3). Tony did not argue that any harm had been done by the appointment of the pastor until his reply brief, thus depriving Sarah of an opportunity to respond to this argument. We decline to address the issue further.

¶26    *3. Did the District Court err when it did not follow the recommendation of the parenting evaluator that Tony be allowed "make up" visitation days for those days he missed visitation while working out of town?*

¶27    Lastly, Tony asserts that the District Court abused its discretion by rejecting the suggestion by the parenting evaluator that Tony be allowed "make up" days for the days of visitation he misses with the children when he is away working. Tony argues there was no evidence before the court justifying the court's determination that "make up" days were unnecessary, but provides no supporting authority for the assertion that the District Court's determination on this matter was error. *See* M. R. App. P. 12(1)(f) (parties are to support their arguments with citations to authorities).

¶28    In rejecting the recommendation, the District Court reasoned that "Tony is a good father. However, he is on the road a lot due to his various businesses. Therefore, the Court finds it would be disruptive for Sarah and the children to provide him with make up time." Sarah testified that when the children are with her, they follow a routine. She also testified that she gives the kids to Tony as much as reasonably possible when he is in town, even if it is on her allotted day.

¶29    "Child custody cases often present the court with difficult decisions. We must presume that the court carefully considered the evidence and made the correct decision." *In re the Parenting of N.S.*, 2011 MT 98, ¶ 18, 360 Mont. 288, 253 P.3d 863 (citation omitted). The District Court found that an effort to make up lost days would be disruptive to Sarah and the children, a finding that Tony does not challenge. After

11

reviewing the record, we conclude that Tony has not demonstrated that the District Court "acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice," *Albrecht*, ¶ 7, in denying the request for make-up days.

¶30　Affirmed.

/S/ JIM RICE


We concur:


/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ JAMES C. NELSON
/S/ MICHAEL E WHEAT