**FILED**

April 15 2014

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 13-0493

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 97

IN RE THE MARRIAGE OF:

LONA ANN CARTER-SCANLON,

Petitioner and Appellee,

and

JOSEPH D. SCANLON,

Respondent and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. BDR 00-373
Honorable Jeffrey M. Sherlock, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Mark P. Yeshe, Attorney at Law, Helena, Montana

For Appellee:

David B. Gallik, Gallik Law Office, PLLC, Helena, Montana

Submitted on Briefs:  March 5, 2014
Decided:  April 15, 2014

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Joseph P. Scanlon (Joe) appeals from an order of the First Judicial District Court, Lewis and Clark County, determining Joe's income and monthly child support obligations for the children he has with Lona Carter-Scanlon (Lona). We affirm. We restate Joe's issues on appeal as follows:

¶2 1. Did the District Court err in its manner of taking judicial notice of a prior Child Support Enforcement Division (CSED) determination?

¶3 2. Was the District Court's determination of Joe's income clearly erroneous?

## BACKGROUND

¶4 Joe and Lona divorced on November 10, 2003. They have two children. At the time of the divorce, Joe earned $87,051 per year as a pharmaceutical sales representative for Forest Pharmaceuticals. Based on the income of the parties and the Montana Child Support Guidelines (Admin. R. M. Title 37, chapter 62, subchapter 1), the District Court determined that Joe's monthly child support obligation was $1,381.

¶5 On April 29, 2005, Joe filed a motion to modify child support, citing "substantial and continuing changes in circumstances." In his affidavit, Joe stated that he had been forced to resign from his position at Forest Pharmaceuticals that year, and that he was currently a 25% owner in a new business called NorthStar, which was developing a residential subdivision. At the time of his affidavit, Joe was not yet earning any income from his work at NorthStar.

¶6 After hearings on March 30, 2006, and May 11, 2006, the District Court granted Joe's motion on May 18, 2006. The District Court found that Joe had resigned from

2

Forest Pharmaceuticals and subsequently been unemployed, and that Joe expected to make $20 to $25 per hour working at NorthStar. The District Court noted that Joe stated he was experiencing serious financial trouble, and his parents had loaned him money so that he could make his house payment. Lona had asked the District Court to impute income to Joe equivalent to his previous salary at Forest Pharmaceuticals, which the District Court denied. Instead, the District Court calculated Joe's income to be $52,000, based on Joe's testimony that he expected to make $25 per hour at NorthStar. The District Court then reduced Joe's monthly child support obligation from $1,381 to $814, pursuant to the Montana Child Support Guidelines.

¶7 On October 10, 2008, Joe filed a second motion to modify child support, in which he stated that due to the economic downturn he had not earned $52,000 per year since the 2006 hearings as he had expected. A hearing on the motion was reset due to a conflict in the court's calendar for January 27, 2009. On January 26, 2009, Joe moved to continue the hearing. The court granted the continuance, and directed Joe to reschedule the hearing with the District Court Clerk. Joe's 2008 motion to modify child support did not come on for hearing until 2013.

¶8 Meanwhile, in April 2011, Joe had a child with Joann Buer. Joann opened a case with the CSED to obtain child support from Joe, which determined his yearly income to be $74,020. The CSED then sent a notice and order to Joe indicating the income determination, and that he owed Joann $585 per month for child support. Joe disputed the income determination and requested a hearing with the CSED.

¶9     After a hearing on January 20, 2012, the Administrative Law Judge (ALJ) for the CSED determined that further briefing was required regarding Joe's income from NorthStar. A second hearing occurred on March 28, 2012. Joe was represented by counsel during both of these hearings, while Joann was not. The ALJ's proposed order, which became a final agency order on May 11, 2012, found that there was extensive testimony and argument regarding Joe's income from NorthStar, the losses to Joe's farm and other businesses, and his lifestyle and personal expenses. The ALJ held that the losses from Joe's other businesses could not be used to offset his other income. The ALJ also determined that Joe received the following income for his work as a foreman at NorthStar: $23,913 in 2008; $29,545 in 2009; $22,284 in 2010; and $24,087 in 2011. Based on an average actual income of $24,957, the ALJ set Joe's child support payments to Joann at $83 per month pursuant to the Montana Child Support Guidelines.

¶10    On June 21, 2012, Joe moved the District Court, in his case with Lona, to take judicial notice of the CSED's income determination of $24,957 per year, pursuant to M. R. Evid. 201 and 202. Lona opposed this motion, stating that she was not given notice of the CSED hearing, she had not received its order, and that Joe was voluntarily underemployed. On June 29, 2012, Joe filed a reassertion of his motion to modify child support, re-alleging the contents of his 2008 pleading, noting that his 2008 motion had never been withdrawn or adjudicated. Lona also opposed this motion.

¶11    The District Court issued an order on August 1, 2012, in response to Joe's motion to take judicial notice. The District Court held: "[T]he Court sees no problem with taking judicial notice of the fact that CSED made a determination as to what Joe's income is." It

4

continued, "This in no way binds this court and does not limit Lona's ability to introduce evidence to the contrary." Citing the Commission Comments to Rule 201, the District Court stated that because the amount of Joe's income was in dispute, Lona was to be afforded the opportunity to contest the CSED income determination. The District Court concluded: "The Court will take judicial notice of CSED's determination of Joe's income, but does not intend to be bound by that determination. Lona will be given full opportunity at the hearing to present whatever evidence she has that might suggest that Joe is voluntarily underemployed."

¶12 A hearing on Joe's motion to modify child support took place on May 30, 2013. Much of Joe's testimony was the same as that which he gave during the 2006 hearings on his motion to modify child support. Joe added that he was not able to earn the $20 to $25 per hour with NorthStar as he had expected at the time of his 2006 testimony. He testified that he sought other part-time or temporary employment in order to make ends meet, including fencing, haying, and working with horses, and that his parents had loaned him approximately $190,000 since his separation from Lona. Joe also explained that he did not want to leave his job at NorthStar because he owned such a large stake in the company. Joe explained he had a variety of job duties at NorthStar, including managing certain aspects of the development, but that he was not qualified to be a construction manager, nor did he act as one. Joe asked the District Court to adopt the CSED determination that he earned an average of $24,957 per year, and to set child support based on his current yearly wages of $24,000.

¶13 Certified Public Accountant Nicholas Bourdeau then testified as an expert witness on behalf of Lona regarding Joe's income. Bourdeau computed Joe's child support obligation as $1,958 per month, based on an average annual income of $73,789. Bourdeau's computation considered the equity Joe had in NorthStar, Joe's education, and the average income for construction managers (the job title that he felt most appropriately applied to Joe) in Montana. Bourdeau then calculated Joe's imputed income as $78,380, with a child support obligation of $2,035 per month. On cross-examination, Joe questioned Bourdeau's calculations and challenged Bourdeau's method of assessing imputed income pursuant to Admin. R. M. 37.62.106.

¶14 The District Court issued its Findings of Fact, Conclusions of Law, and Order on June 26, 2013. The court's findings recounted the above testimony, and noted the CSED income determination of $24,957. The court further noted that Joe had moved for judicial notice of the CSED income determination, but that it had denied the motion. The District Court concluded: "Due to the very confusing record keeping in this case, it is impossible to calculate, with any precision whatsoever, what Joe's actual income is or even should be . . . . [A] lot of this is Joe's fault due to his inadequate record keeping." Thus it decided it was necessary to impute income to Joe pursuant to Admin. R. M. 37.62.106. It considered Joe's occupational and professional qualifications, his education, and Joe's testimony at the 2006 motion to modify child support hearings. The District Court imputed income to Joe of $52,000 per year, and determined his monthly child support obligations would remain at $814 per month.

**STANDARDS OF REVIEW**

¶15 Evidentiary rulings by a district court are reviewed for an abuse of discretion. *West v. Club at Spanish Peaks LLC*, 2008 MT 183, ¶ 44, 343 Mont. 434, 186 P.3d 1228; *In re Marriage of Steab*, 2013 MT 124, ¶ 11, 370 Mont. 125, 300 P.3d 1168 (citing *U.S. v. Chapel*, 41 F.3d 1338, 1342 (9th Cir. 1994)). We review a district court's findings of fact and conclusions of law which underlie an order for the modification of child support to determine whether the district court's findings of fact are clearly erroneous and whether its conclusions of law are correct. *In re Marriage of Cowan*, 279 Mont. 491, 496, 928 P.2d 214, 217 (1996).

**DISCUSSION**

¶16 *Issue One: Did the District Court err in its manner of taking judicial notice of a prior CSED determination?*

¶17 There are two distinct types of judicial notice. First, M. R. Evid. 201, which is virtually identical to Fed. R. Evid. 201, authorizes a district court to take judicial notice of facts. M. R. Evid. 201 states: "A fact to be judicially noticed must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned."[1] M. R. Evid. 201(b).

---

[1] The type of facts that have been judicially noticed are too numerous to list. Examples include: that Billings is located in Yellowstone County, *State v. Jackson*, 180 Mont. 195, 201, 589 P.2d 1009, 1013 (1979); that ice hockey involves rough physical contact, *Neeld v. Natl. Hockey League*, 594 F.2d 1297, 1300 (9th Cir. 1979); that the Klu Klux Klan is a white hate group, *United Klans of Am. v. McGovern*, 453 F. Supp. 836, 839 (N.D. Ala. 1978); the history of a stock price, *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1064 n. 7 (9th Cir. 2008), the information posted on a government website, *Daniels-Hall v. Natl. Educ. Assn.*, 629 F.3d 992, 998-99 (9th Cir. 2010).

Judicial notice of fact is mandatory "if requested by a party and supplied with the necessary information." M. R. Evid. 201(d). Second, M. R. Evid. 202 allows a court to take judicial notice of law, including "[r]ecords of any court of this state or of any court of record of the United States or any court of record of any state of the United States." M. R. Evid. 202(b)(6); *see Farmers Plant Aid, Inc. v. Fedder*, 2000 MT 87, ¶ 27, 299 Mont. 206, 999 P.2d 315. Judicial notice of law is mandatory concerning the common law, the constitutions and statutes of the United States and the states, the territory and jurisdiction of the United States, and "any other law when requested by a party and supplied with the necessary information." M. R. Evid. 202(d)(1)-(2). Both types of judicial notice also allow a court to take judicial notice at its discretion, whether requested or not. M. R. Evid. 201(d), 202(c). "One function of judicial notice is to avoid a waste [of] time litigating about undeniable matters." Edward J. Imwinkelried, *Courtroom Criminal Evidence* vol. 2, § 3002, 30-2 (5th ed., Bender 2011) (internal citation and quotation marks omitted).

¶18 At first glance it is not completely clear whether the District Court took judicial notice of the CSED's determination of Joe's income, and if so, whether it did so of the facts underlying that determination pursuant to Rule 201, of the legal record pursuant to Rule 202, or both. As stated above, Joe moved the District Court to take judicial notice of the CSED's income determination pursuant to both Rule 201 and Rule 202. In the court's August 1, 2012 order, it stated it would take "judicial notice of CSED's determination of Joe's income, but does not intend to be bound by that determination. Lona will be given full opportunity to present whatever evidence she has that might

8

suggest that Joe is voluntarily underemployed." Then in the court's June 26, 2013 order, the court found "[o]n June 21, 2012, Joe moved the Court to take judicial notice of CSED's child support determination . . . . That motion was denied by the Court."

¶19 Despite these seemingly inconsistent statements, a thorough examination of the record shows that the District Court took judicial notice of the existence of the CSED determination pursuant to Rule 202, but it did not take judicial notice of the underlying facts pursuant to Rule 201. This conclusion is supported by the District Court's statement that it had "no problem with taking judicial notice of the fact that CSED made a determination as to what Joe's income is." It is also supported by the District Court's qualification that it not be bound by that determination, and the District Court's emphasis that because Joe's income was disputed, it was not an appropriate matter to be judicially noticed pursuant to Rule 201. Therefore, a full review of the record shows that the District Court only took judicial notice of law of the CSED's income determination pursuant to Rule 202.

¶20 Next, we consider whether the District Court abused its discretion in the manner in which it considered the CSED's income determination. Joe argues that judicial notice of the CSED's income determination was mandatory pursuant to Rule 201 and Rule 202, and that the District Court was thereby required to accept the CSED's finding that his yearly income was $24,957.

¶21 Joe's arguments misconstrue a fundamental purpose of judicial notice, which exists, in part, to save time by not having to litigate undisputed or "undeniable" matters. *See* Imwinkelried, *Courtroom Criminal Evidence* at 30-2. Joe's argument on judicial

9

notice, while not explicitly invoking the principles of collateral estoppel, essentially purports that Lona was barred from litigating the matter of Joe's income because it had already been determined by the CSED. *See Baltrusch v. Baltrusch*, 2006 MT 51, ¶ 18, 331 Mont. 281, 130 P.3d 1267 (citing *Haines Pipeline Const. v. Mont. Power*, 265 Mont. 282, 288, 876 P.2d 632, 636 (1994) ("Collateral estoppel bars litigants from reopening all questions essential to the judgment which were determined by a prior judgment.")). However, Joe does not explicitly raise collateral estoppel as an issue on appeal. Regardless of the term used, Joe's argument improperly suggests that a district court is bound by the findings of the CSED. While a district court generally defers to an agency's findings of fact, *Lehy v. Dept. of Revenue*, 266 Mont. 94, 97, 879 P.2d 653, 655 (1994), such deference is not applicable in the instant case. Joe has presented no evidence that Lona knew about, or participated in, the CSED hearing. Even if she had known about the hearing, Lona would not have had standing to challenge the income determination in a case in which Lona was not a party. *See generally Gryczan v. State*, 283 Mont. 433, 942 P.2d 112 (1997). Joe's argument that the income determination was "fully litigated in a contested case" is thus irrelevant, considering that Lona was not one of the litigants. Therefore, Joe's arguments that the District Court was required to accept the findings of the CSED are incorrect, and further analysis of the deference to be afforded the findings of an administrative agency is unnecessary.

¶22 Similarly, the cases that Joe cites do not support his argument that the District Court abused its discretion by not taking judicial notice of the CSED's income determination pursuant to Rule 201. In *In re S.T.*, 2008 MT 19, 341 Mont. 176, 176 P.3d

1054, the district court took judicial notice of the father's prior conviction for sexual intercourse without consent with a minor in a termination of parental rights case. The father did not object to the district court's finding that he had previously sexually abused a child; thus, his previous act of sexual abuse was not a reasonably disputed fact. We held that the district court was entitled to rely on the evidence that the father had sexually abused a child as one basis for terminating the father's parental rights. *S.T.*, ¶ 18. *S.T.* is distinguishable from the present case in two very important respects: (1) the matter to be judicially noticed here, that of Joe's yearly income, was subject to reasonable, and vigorous, dispute by the parties, and (2) Joe is asking the court to judicially notice a fact that forms the very basis for the present case. Unlike *S.T.*, the entirety of the instant case deals with determining Joe's income. The other cases that Joe cites are similarly distinguishable in that they do not involve judicial notice of a fact that is reasonably disputed (*see Berry v. Mann*, 188 Mont. 71, 74-75, 610 P.2d 1180, 1183 (1980); *In re marriage of Steab*, 2013 MT 124, ¶¶ 29-31, 370 Mont. 125, 300 P.3d 1168), or they only addresses judicial notice under Rule 202 (*see Farmers Plant Aid v. Fedder*, 2000 MT 87, ¶¶ 26-27, 299 Mont. 206, 999 P.2d 315).

¶23 In contrast, as Rule 201 clearly states, and a substantial body of federal caselaw holds, a court may not take judicial notice of fact from a prior proceeding when the fact is reasonably disputed, as it is here. M. R. Evid. 201(b); *see Wyatt v. Terhune*, 315 F.3d 1108, 1114 (9th Cir. 2001) ("[T]aking judicial notice of findings of fact from another case exceeds the limits of Rule 201."); *Lee v. Co. of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) ("[W]hen a court takes judicial notice of another court's opinion, it may do so

11

not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity" (internal quotation marks and citation omitted)); *Hennessey v. Penril Datacomm Networks*, 69 F.3d 1344, 1354 (7th Cir. 1995) ("In order for a fact to be judicially noticed, indisputability is a prerequisite."). Thus, although Joe requested judicial notice of fact, and arguably supplied the necessary information pursuant to M. R. Evid. 201(d), judicial notice of fact was not mandatory because the fact was clearly and reasonably disputed.

¶24 We conclude that the District Court did not abuse its discretion by taking judicial notice of the existence of the CSED's administrative order, or by refusing to take judicial notice of the truth of its underlying facts.

¶25 ***Issue Two: Was the District Court's determination of Joe's income clearly erroneous?***

¶26 Joe next argues that Lona failed to prove that he was underemployed, and therefore the District Court improperly imputed his income instead of determining his actual income. Additionally, he contends that the District Court's computation of the imputed income was clearly erroneous because it was not based on evidence, and because it did not follow the correct procedure as directed by Admin. R. M. 37.62.106. Lona responds that the record reflects the evidentiary basis for the District Court's determination, and thus the District Court's determination was correct.

¶27 In determining child support obligations, a district court must follow the Child Support Guidelines unless clear and convincing evidence is produced demonstrating that the application of the guidelines is unjust to the child or to any of the parties, or is

inappropriate to that particular case. Section 40-4-204(3)(a), MCA. Imputed income refers to "income not actually earned by a parent, but which will be attributed to the parent," when the parent is unemployed, underemployed, fails to produce sufficient proof of income, has an unknown employment status, or is a student. Admin. R. M. 37.62.106 (1)-(2). A parent is "underemployed" for purposes of the rule when the parent is:

> employed less than full time, when full-time work is available in the community or the local trade area, and/or earning a wage that is less than the parent has earned in the past, or is qualified to earn, when high paying jobs are available in the community or the local trade area, for which the parent is qualified.

Admin. R. M. 37.62.103(15). Calculation of a parent's imputed income is based on the parent's recent work history, the parent's occupational and professional qualifications, and existing job opportunities and associated earning levels in the community or local trade area. Admin. R. M. 37.62.106(3)(a)-(c).

¶28 First, the District Court did not err in its decision to impute Joe's income. As stated, imputation of income is appropriate when a parent fails "to produce sufficient proof of income." Admin. R. M. 37.62.106(2)(c). The District Court determined that Joe had failed to sufficiently prove his income for child support purposes, stating that, "a lot of this is Joe's fault due to his inadequate record keeping." The court chose not to credit the evidence presented by Joe that he was not underemployed, noting that Joe "concentrated his time on pursuits that do not generate a reasonable amount of income." We have often stated that we will not "second guess the district court's determination regarding the strength and weight of conflicting testimony." *In re Everett*, 2012 MT 8, ¶ 19, 363 Mont. 296, 268 P.3d 507 (internal quotation marks omitted) (citing *In the*

13

*Matter of J.R.*, 2011 MT 62, ¶ 65, 360 Mont. 30, 252 P.3d 163); *see also In re the Marriage of Chiovaro*, 247 Mont. 185, 805 P.2d 575 (1990) (affirming the court's discretionary imputation of income for track coaching fees which were available to a father had he not voluntarily chosen to refrain from coaching). Thus, the District Court did not err in imputing income due to Joe's underemployment and his failure to meet his burden of producing sufficient proof of income pursuant to Admin. R. M. 37.62.106(2).

¶29 Second, the District Court adhered to the requirements of Admin. R. M. 37.62.106 in calculating Joe's imputed income. The court's order considered the fact that Joe had voluntarily resigned from a job in which he earned approximately $85,000 per year, and recognized that it is unlikely that Joe could find another job that paid that amount. It continued that Joe's occupational and professional qualifications, including his work experience and his education, supported the notion that he is capable of securing employment that would provide higher wages than he currently claims to make. The District Court ultimately made the same determination as it did in 2006. Thus, the District Court's calculation of Joe's imputed income was not clearly erroneous. *See In re T.J.H.*, 279 Mont. 74, 76-79, 923 P.3d 1070, 1071-72. Accordingly, we affirm the District Court's imputation and calculation of Joe's income.

### CONCLUSION

¶30 For the foregoing reasons, we affirm.

/S/ LAURIE McKINNON

14

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ JIM RICE