DA 23-0134

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 30

FILED

02/20/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0600

DENNIS VANCOS,

      Plaintiff and Appellant,

  v.

STATE OF MONTANA, DEPARTMENT OF
TRANSPORTATION, and JOHN DOES, 1-50,

      Defendants and Appellees.

APPEAL FROM:   District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DV-19-848
Honorable Peter B. Ohman, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Hillary P. Carls, Carls Law, PLLC, Bozeman, Montana

      For Appellees:

      Maxon R. Davis, Davis, Hatley, Haffeman & Tighe, P.C., Great Falls,
Montana

      Submitted on Briefs:  December 20, 2023

      Decided:  February 20, 2024

Filed:

_____
                Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Dennis Vancos appeals a Gallatin County jury's defense verdict in his negligence action against the State of Montana, arising from injuries he sustained when he was hit by a car in a Big Sky intersection. We restate the issues on appeal as follows:

> *1. Did the District Court err in its handling of evidence of Vancos's consumption of alcohol?*
>
> *2. Did the District Court err when it did not accept Vancos's proposed jury instruction on pedestrian rights-of-way?*
>
> *3. Did the District Court err when it did not strike a prospective juror for cause?*

We conclude that the District Court erred when, after properly allowing evidence that Vancos had been drinking, it refused to take judicial notice of his blood alcohol content (BAC). Because our decision on Issue 1 requires a new trial, we consider the jury instruction and conclude that the court did not abuse its discretion. We need not address the District Court's refusal to strike the prospective juror for cause. Accordingly, we reverse in part, affirm in part, and remand the case to the District Court for a new trial.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 On July 29, 2016, at approximately 9:48 p.m., Vancos walked across the intersection of Montana Highway 64 and Two Moons/Ousel Falls Road in Big Sky (the Intersection). After Vancos had crossed nearly the entirety of the crosswalk, he was struck by a Suburban driven by Michael Ruzicka. Vancos made impact with the Suburban on the front passenger side of the vehicle. He was severely injured in the collision.

2

¶3     At the time of the accident, the Intersection spanned three lanes and was equipped with a solar-powered traffic control device. The push-button-operated device, installed in 2010, activated flashing warning-lights to alert drivers of pedestrians in the Intersection. Engineering firm Morrison-Maierle, which had been contracted by the local Rural Improvement District, selected and installed the device.

¶4     Vancos brought suit against Gallatin County and the State of Montana Department of Transportation (the State), alleging negligent design, installation, and maintenance of traffic control devices. Vancos claimed that the traffic control device did not sufficiently warn drivers of the presence of pedestrians. Vancos alleged further that the flashing warning-lights did not function properly on the night of the accident due to the State's negligent maintenance of the Intersection. Vancos settled with Gallatin County and proceeded to trial against the State.

¶5     During jury selection, prospective juror Martin Gagnon disclosed that he was an employee of Morrison-Maierle. Gagnon said that he was a long-time acquaintance of a potential witness and had worked on the Ousel Falls Road project, including the Intersection. Following a brief *voir dire* by the parties and the court, Vancos moved to strike Gagnon for cause. The District Court denied Vancos's motion. At the end of jury selection, Vancos used his first peremptory challenge to remove Gagnon.

¶6     Before and during trial, the District Court considered how to handle evidence and testimony that Vancos consumed three or four beers between 5:00 and 9:00 p.m. on the evening of the accident. Roughly three weeks before trial, the court granted Vancos's

motion to preclude a State's expert from testifying that Vancos was impaired when the accident occurred. On the first day of trial, with its expert excluded, the State sought permission to question Vancos about how much alcohol he had consumed that night. The court agreed over Vancos's objection to allow the evidence. Vancos requested in the alternative that the court take judicial notice of Vancos's low BAC on the night of the accident and instruct the jury of the same. Following discussion between the court and counsel, and with the understanding that the court would take notice of the BAC evidence, Vancos testified in his own case that he drank three or four beers in the roughly four hours before the accident. After Vancos's testimony and on the last day of trial, the District Court reversed its decision and refused to take judicial notice of the evidence when Vancos had not admitted the BAC report into the record.

¶7 Among his proposed instructions, Vancos proposed Instruction No. 25a. The instruction included language regarding a pedestrian's right-of-way when in a marked crosswalk and the duty of the operator of a motor-vehicle to yield to pedestrians. After a brief discussion with the parties, the court determined that it would issue Instruction No. 25a only if it included statutory language regarding the duty of pedestrians to not enter a crosswalk in an unsafe manner. Vancos chose instead to withdraw the instruction.

¶8 Upon deliberation, the jury found that the State was negligent but that its negligence was not a cause of Vancos's injuries. Vancos moved for a new trial on numerous grounds. The District Court denied his motion and entered judgment on the verdict.

4

## STANDARDS OF REVIEW

¶9 District courts have broad discretion when ruling on the relevance and admissibility of evidence; we review those rulings for abuse of that discretion. *Two Leggins v. Gatrell*, 2023 MT 160, ¶ 10, 413 Mont. 172, 534 P.3d 668 (citation omitted). "To the extent the court's ruling is based on an interpretation of an evidentiary rule or statute, our review is de novo." *State v. Crider*, 2014 MT 139, ¶ 14, 375 Mont. 187, 328 P.3d 612 (citation omitted). We review a district court's conclusions of law for correctness. *State v. Ditton*, 2006 MT 235, ¶ 18, 333 Mont. 483, 144 P.3d 783 (citation omitted).

## DISCUSSION

¶10 *1. Did the District Court err in its handling of evidence of Vancos's consumption of alcohol?*

¶11 Vancos argues that the District Court committed reversible error by permitting the State to admit evidence of Vancos's alcohol consumption when alcohol impairment was not a factor in the accident. The prejudicial effect of the evidence, Vancos asserts, substantially outweighed its probative value and should have been excluded under M. R. Evid. 403. Vancos claims alternatively that if the evidence properly was allowed, he was prejudiced by the District Court's last-minute decision to refuse to instruct the jury as to his BAC based on the court's mistaken conclusion that it could not legally take judicial notice of a fact that was not in evidence. In response, the State argues that evidence of Vancos's alcohol consumption is relevant to explain why he entered and remained in the crosswalk when he should have been able to see Ruzicka approaching. The State maintains

5

that the court properly declined to take notice of the BAC evidence when it was not admitted during trial.

*a. Relevance and admissibility of the BAC evidence.*

¶12    In a pretrial motion in limine, Vancos moved to exclude the testimony of defense expert Dr. Brautbar, who was expected to opine that Vancos's BAC was between .065 and .070 at the time of the accident.  Brautbar's proposed testimony was a retrograde extrapolation based on medical records showing Vancos's BAC was .053.  The blood sample reflected in the medical records was taken while Vancos was in the hospital, at least an hour and a half after the accident.  The District Court conditionally granted Vancos's motion.  It explained that unless the State presented evidence that a person with a BAC of .065 to .070 was too impaired to safely cross a crosswalk, the expert's testimony likely would violate M. R. Evid. 403.

¶13    On the first day of trial, the State sought permission from the court to question Vancos about how much alcohol he had consumed prior to crossing the Intersection.  Over Vancos's objection, the court permitted the State's request.  In response, Vancos sought to enter the medical report showing that his BAC was .053 roughly an hour and a half after the accident.  The court did not immediately rule on Vancos's request.[1]

¶14    Two days later, Vancos again raised the issue and moved to exclude evidence of consumption as irrelevant under M. R. Evid. 403 or, in the alternative, asked the court to

---

[1] In later discussions regarding this evidence, the State's counsel said, "[The State] stipulate[s] to the medical records going into evidence." It does not appear, however, that the medical records containing the BAC evidence were admitted.

take judicial notice of Vancos's BAC reflected in the medical records. Vancos highlighted the importance of the issue by noting that if the State were allowed to elicit testimony regarding alcohol, "we are going to be forced to ask our client about it in direct -- deal with it in that way -- so this is a real key issue that we really need to figure out right now." A few moments later, counsel for the State affirmed Vancos's concerns, stating that if Vancos did not testify to his alcohol consumption on direct, the State would ask him about it. The court then stated:

> [J]ust to keep it clean, if [consumption evidence] comes in -- if it comes up either opening the door, or through direct, or whatever, I'm not going to preclude it. The .053 can come in. The Court will take judicial notice. You can tell the jury that .08 is the level for impairment for driving[.]

Then, after a brief back-and-forth between the parties and the court, the following colloquy took place:

> THE COURT: . . .[T]his will be my order to avoid confusion -- you can talk about drinking. [Vancos] had a .053. That's it, and that a -- the BAC for the DUI is .08. So that's my ruling. Any confusion there?
>
> MS. CARLS: No, Your Honor. We'll draft a jury instruction to that effect and get it to all parties this evening.
>
> THE COURT: Clear?
>
> MR. DAVIS: Yeah.

Later that day, Vancos testified on direct examination that in the hours leading up to the accident, he had consumed three or four beers.

¶15     The next day, Vancos rested his case and proposed Instruction No. 11a to the court. It read:

A court may take "judicial notice" of some facts and if it does, no evidence is required to prove them. In this case, the court has taken judicial notice of the fact(s) that:

1. Only to provide context regarding item 2 below, under Montana law, the charge of Driving Under the Influence of Alcohol directs that with an alcohol concentration of 0.08 or more, it may be inferred that the person was under the influence of alcohol. The inference is rebuttable.

2. On July 29, 2016, Dennis Vancos's blood alcohol content was measured to be 0.053.

Over the State's objection, the District Court accepted Vancos's proposed instruction. At the end of the day, while settling instructions, the court returned to Instruction 11a. The State argued that Instruction 11a should not be given because the DUI statute was not applicable to the case and that Vancos's BAC was an "evidentiary fact, which [the court] shouldn't be taking judicial notice of." The District Court then, under the mistaken impression that the medical records containing Vancos's BAC had been admitted, stated:

> I think what we can do is I think that I can give the judicial notice, with respect to what the law is, with respect to driving under the influence and the alcohol concentration, and then, I think you can reference, since it's in evidence, that his blood alcohol was a .05.

Vancos then clarified for the court that the records had not been admitted as evidence. The following discussion then took place:

> THE COURT: All right. Well, that's on me, then, because I said that was okay with me, and I would take judicial notice of it, and there was further conversation about it. And now, here we are at the end with that, so I'll give this as it is. I understand the State's objection, but I think I created that situation here, and based on my understanding, to be honest with you, I thought that you're okay with it, so that's where I'm at.

> MR. DAVIS: Again, I'll object. In the absence of the medical record documenting it, it's something that's not part of the record, and I think it's not the kind of thing that the Court can take judicial notice of.

8

THE COURT: Right. I know. But when we had this conversation yesterday, I thought you were okay with going through with it this way. That was the impression I got from you.

MR. DAVIS: I thought we would have the medical records, and I could point to it; Ms. Carls could point to it. They weren't introduced into evidence.

The court adjourned for the evening, with the trial set to conclude the next morning.

¶16 When the court convened the following day, the District Court reversed its decision from the prior evening. It advised:

So I slept on it last night. I don't think I can give [Instruction No. 11a]. I mean, if it's not in evidence, the .053, I think it would be clear error for me to give an instruction[] on a fact that is not in evidence. It does not comply with Rule 201, so I can't give it. I'm going to have to reject that instruction, so that one will not come in.

Vancos responded:

MS. CARLS: Judicial notice is intended for facts that are not in evidence that the Court is taking under consideration for whatever the reason is. Because of that, we think that that is a proper item. More importantly, though, we addressed this issue; brought it up before the testimony so that we could make a decision on that. The Court made a ruling on it. We made strategic decisions to ask specific questions about alcohol, based on the knowledge that this would come in. We would have made different decisions had that not been the decision . . .

The District Court then admonished Vancos, "[Y]ou should have put the .053 into evidence. You didn't, so that's on you. That's my ruling." Shortly thereafter, the State rested its case without raising the issue of alcohol consumption.

¶17 Read together, M. R. Evid. 401, 402, and 403 require that all evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" is

9

admissible unless the evidence's "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Evidence of a person's use of intoxicating substances can be highly prejudicial. *Havens v. State*, 285 Mont. 195, 200, 945 P.2d 941, 944 (1997). This type of evidence is not admissible to impeach the credibility of a witness. *State v. Polak*, 2018 MT 174, ¶ 18, 392 Mont. 90, 422 P.3d 112. If the proper foundation demonstrates that a person is under the influence of intoxicating substances, however, such evidence is admissible to question a person's ability to perceive events. *Polak*, ¶ 18 (citations omitted).

¶18 As he did in his motion for new trial, Vancos relies on *Havens*, arguing that it is strikingly similar to this case. Steven Havens was severely injured when a driver pulled out in front of him as he drove his motorcycle through the intersection of Harrison Ave. and the entrance to Walmart in Butte. *Havens,* 285 Mont. at 197, 945 P.2d at 942. Havens sued the State, alleging negligence for its failure to install a stoplight at the intersection. *Havens*, 285 Mont. at 197, 945 P.2d at 942. Claiming contributory negligence and intervening events, the State intended to call an expert to testify that Havens's .068 BAC impaired his ability to react and caused the accident; Havens moved in limine to exclude the expert. *Havens,* 285 Mont. at 197, 945 P.2d at 942. Reassured by the State that it would elicit evidence and testimony linking the BAC evidence to the element of causation, the district court denied Havens's motion. *Havens*, 285 Mont. at 197, 945 P.2d at 942. Anticipating the State's evidence, Havens testified about his alcohol consumption in his

case-in-chief. *Havens*, 285 Mont. at 198, 945 P.2d at 942. Then, despite its representations to the court that it would do so, the State failed to produce any evidence linking Havens's alcohol consumption to the cause of the accident. *Havens,* 285 Mont. at 198, 945 P.2d at 942. In fact, both the investigating officer and the State's expert testified that Havens could not have avoided the accident and that alcohol played no part in the crash. *Havens*, 285 Mont. at 198, 945 P.2d at 942. We reversed the resulting defense verdict, stating:

> [U]nder [M. R. Evid. 402], the results of the toxicology report and evidence of Havens'[s] alcohol consumption should have been excluded because, in the absence of testimony linking the evidence to the question of causation, it was irrelevant. Furthermore, the highly prejudicial nature of the evidence created a danger of confusion on the issue of causation.

*Havens*, 285 Mont. at 200, 945 P.2d at 943-44.

¶19    Although the facts here share several similarities with *Havens*, we find them distinguishable in several key ways. First, the evidence erroneously admitted by the district court in *Havens*—expert testimony regarding Havens's BAC—is the same evidence the District Court excluded in its pretrial ruling here. At trial here, in contrast, the District Court admitted testimony that Vancos consumed three or four beers on the evening of the accident. In fact, the District Court appears to have been mindful of this very distinction when, in response to the State's request to question Vancos about his alcohol consumption, the court stated:

> I think alcohol is within common knowledge of the jurors. I did issue that ruling, with respect to the expert because I didn't think there was a basis for that expert opinion. But I think it's okay you can ask him what he drank, and then, the Plaintiff[] can go through cross-examination, and rehabilitate, and say it wasn't a big deal, or whatever. But it sounds like – I think it's something that could be relevant, but maybe it's not relevant. So that's the

> Court's ruling. It can come in, but, you know, the jury can take it within their common knowledge as to whether or not it has any impact, as to whether it had any impact on Mr. Vancos's behavior that evening.

The District Court thoughtfully considered the claims of the parties and the proffered evidence. The court distinguished between the State's proposed expert testimony and Vancos's own testimony. Further, the court reasonably determined that jurors could rely on their own experiences to determine whether Vancos's consumption of three or four beers over the course of an evening contributed to the accident.

¶20 Second, although the Court in *Havens* reversed the district court's decision, it took care to note that the admission of evidence of Havens's alcohol consumption was not inadmissible per se, but became improper only when the State failed to proffer any evidence linking alcohol consumption to causation. *Havens*, 285 Mont. at 201, 945 P.2d at 944. Even the State's witnesses had refuted that proposition. *Havens*, 285 Mont. at 200, 945 P.2d at 943. Here, however, evidence was presented that put Vancos's perceptive abilities at issue. James Davis, a witness to the accident, testified that as Ruzicka approached Vancos, Vancos "wasn't walking very fast at all." Melissa Davis, a second witness, testified that she "didn't notice any change in [Vancos's] speed" as he crossed the road. The State presented expert testimony that, at the time of the accident, Vancos likely would have been able to see Ruzicka approaching for 27 seconds before the collision. Whether Vancos's perception was impaired was directly relevant to his reaction to Ruzicka's approaching vehicle.

¶21    The District Court carefully considered the law, the facts at issue, and the arguments of the parties and arrived at a well-reasoned decision regarding the evidence in this case. Testimony raised the question whether Vancos's ability to accurately perceive and respond to the approaching vehicle was impaired. Whether the State's negligence or his own helped cause his injuries was at issue in the trial. The District Court did not abuse its discretion when it determined that evidence of Vancos's alcohol consumption had a direct bearing on that question. *See* M. R. Evid. 401.

*b. Refusal to take judicial notice of Vancos's BAC.*

¶22    M. R. Evid. 201 governs judicial notice of all facts. Under the rule, a court may take judicial notice of a fact where the fact is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." M. R. Evid. 201(b). Once a fact is judicially noticed, the party offering it is no longer required to seek admission of supporting evidence. *In re S.T.*, 2008 MT 19, ¶ 17, 341 Mont. 176, 176 P.3d 1054. Indeed, one of the purposes of the judicial notice rules is to save parties and the court the time and expense associated with introducing evidence. *See In re S.T.*, ¶ 17; *In re Marriage of Carter-Scanlon*, 2014 MT 97, ¶ 21, 374 Mont. 434, 322 P.3d 1033; *State v. Hart*, 191 Mont. 375, 389-90, 625 P.2d 21, 29 (1981). In a civil action, a judicially noticed fact is conclusive, and the district court is required to instruct the jury as such. M. R. Evid. 201(g).

¶23 At trial, the State did not dispute that roughly ninety minutes after the accident, Vancos's blood was drawn and showed a BAC of .053. The District Court had discretion to determine whether admission of Vancos's BAC was appropriate. Had the court determined that Vancos failed to "suppl[y] the court with the necessary information" or that the BAC evidence was "subject to reasonable dispute," it would have been within its discretion to refuse to take judicial notice of his BAC. M. R. Evid. 201(b), (c), (d); *see also In re Marriage of Carter-Scanlon*, ¶¶ 21-22. But no party questioned the accuracy of the report, and that does not appear to have been the court's reasoning.[2] The District Court determined that it could not issue Instruction No. 11a because Vancos had not entered evidence to support it. The District Court reasoned that "it would be clear error for me to give an instruction[] on a fact that is not in evidence. It does not comply with Rule 201, so I can't give it." This mistake of law constitutes an abuse of discretion. *Larson*, ¶ 16.

¶24 The District Court's interpretation of M. R. Evid. 201 was incorrect. A party need not introduce evidence of a fact judicially noticed. *In re S.T.*, ¶ 17. Requiring such evidence frustrates the purpose of judicial notice—which substitutes for further proof. There being no disagreement that the accuracy of the BAC record could not be reasonably questioned, judicial notice was proper and Vancos did not need to put the medical record into evidence. The court's incorrect interpretation of the Rule constitutes an abuse of discretion.

---

[2] The State does not argue that it would have been improper under M. R. Evid. 201(b)(2) for the court to take judicial notice of the BAC in this case.

¶25 As the State points out, however, the inquiry does not end there. A claimed error cannot be "predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." M. R. Evid. 103(a). The State maintains that Vancos was not prejudiced by the District Court's ruling because he cannot demonstrate that the exclusion of the BAC information had a material bearing on the case. But once the District Court ruled that evidence of his alcohol consumption was admissible, Vancos reasonably decided to address it head-on in his case-in-chief. The District Court advised the parties it would take judicial notice of the BAC and changed its mind only after Vancos had rested his case. Vancos did not have the opportunity to address the issue in rebuttal because, following the court's decision, the State chose not to present testimony in its case regarding Vancos's alcohol consumption. Given that the court issued its ruling on the BAC evidence on the last day of trial, Vancos's attorneys adjusted their closing arguments at the last minute, arguments they had prepared with the understanding that the jury would be advised of the BAC evidence. The State counters that Vancos could have sought to reopen his case-in-chief. But Vancos timely drew the error to the court's attention in conformity with M. R. Civ. P. 51(b)(2); the law does not preclude him from seeking to rectify the court's error on appeal.

¶26 The evidence at trial showed that the Intersection was modified after Vancos was hit.[3] The State's defense focused on two points: one, that Vancos had not proven the Intersection was unsafe or the warning-lights were not working and two, that he could have

---

[3] There is no issue on appeal with the admission of this evidence.

avoided the accident had he been paying better attention. The jury's verdict shows that it did not agree with the State's first argument. The result turned on what caused Vancos's injuries. Because his consumption of alcohol could have proven a key factor in the jury's decision, we conclude that Vancos has demonstrated prejudice to his substantial rights.

¶27 *2. Did the District Court err when it did not accept Vancos's proposed jury instruction on pedestrian rights-of-way?*

¶28 When reviewing a claimed error in a particular instruction, we consider the instruction in the context of all instructions given, along with the evidence adduced at trial. *Tarlton v. Kaufman*, 2008 MT 462, ¶ 19, 348 Mont. 178, 199 P.3d 263. A district court has broad discretion when instructing a jury, so long as the instructions fully and fairly instruct the jury on the law applicable to the case. *Peterson v. St. Paul Fire & Marine Ins. Co.*, 2010 MT 187, ¶ 22, 357 Mont. 293, 239 P.3d 904 (citation omitted).

¶29 Vancos included proposed Instruction No. 25a, which read:

> Montana law provides that pedestrians shall cross highways at marked crosswalks.
>
> Montana law provides that the operator of a vehicle shall yield the right-of-way, slowing down or stopping if necessary, to a pedestrian crossing the roadway within a marked crosswalk.

Vancos pointed to allegations at trial that he had been wrongfully in the crosswalk and argued that the instruction was necessary to fully instruct the jury that he had a legal right to the right-of-way while in the crosswalk. In response, the State argued that Instruction No. 25a was improper, as the right-of-way exists between pedestrians and drivers. Because Ruzicka was not a defendant in the case, the State contended, the proposed instruction was

16

improper. The State argued further that, if the court were inclined to give the instruction, it also should clarify that the right-of-way is not absolute and a pedestrian still has a duty of care to act in furtherance of his own safety. After considering the arguments of the parties and the applicable statutes, the District Court determined that it would give the following instruction:

> The operator of a vehicle shall yield the right of way, slowing down, or stopping, if necessary, to a pedestrian crossing the roadway within a marked crosswalk, but a pedestrian may not suddenly leave a curb, or other place of safety, and walk or run into the path of a vehicle that is so close it is impossible for the operator to yield.

Unsatisfied with the court's reformulation, Vancos chose to withdraw proposed Instruction No. 25a.

¶30 The District Court's reformulation of the proposed instruction respected its responsibility to issue instructions that fully and fairly instruct the jury on the law applicable to the case. The applicable statute, § 61-8-502(1)(a), MCA, reads in pertinent part:

> Except as provided in subsection (1)(b), when traffic control signals are not in place or not in operation, the operator of a vehicle shall yield the right-of-way, slowing down or stopping if necessary, to a pedestrian crossing the roadway within a marked crosswalk or within an unmarked crosswalk at an intersection, but a pedestrian may not suddenly leave a curb or other place of safety and walk or run into the path of a vehicle that is so close that it is impossible for the operator to yield.

Vancos essentially argues that because there were no allegations that he had run into the path of a vehicle, the language of the second half of the statute was not relevant. Despite Vancos's objection, the court concluded that the parties could argue the point to the jury in

closing arguments—which Vancos did. The record reflects that the District Court considered Vancos's argument but found it appropriate to inform the jury of the entirety of the law. Vancos has not shown that the court acted arbitrarily or without conscientious judgment or that the court did not fully and fairly instruct the jury on the applicable law. We regularly uphold instructions that "mirror[] the language of [a] statute" on the applicable law. *State v. Hudson*, 2005 MT 142, ¶ 21, 327 Mont. 286, 114 P.3d 210; *see also State v. Himes*, 2015 MT 91, ¶ 42, 378 Mont. 419, 345 P.3d 297 (citing *Hudson*, ¶ 21) ("We have long upheld jury instructions which are reiterations of statutory language."). The District Court did not abuse its discretion when it rejected Vancos's proposed Instruction No. 25a in favor of a complete statement of the applicable law.

## CONCLUSION

¶31 The District Court erred as a matter of law when it determined it could not take judicial notice of Vancos's BAC under the reasoning that he did not enter evidence to support it. The District Court was within its discretion to refuse Vancos's proposed Instruction No. 25a. Because the evidentiary error prejudiced Vancos's substantial rights, we remand the case for a new trial. We therefore need not consider Vancos's claim that the court should have removed prospective juror Gagnon for cause.

¶32 Affirmed in part, reversed in part, and remanded for further proceedings.


/S/ BETH BAKER

18

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ JIM RICE